400 S.E.2d 191 (1991)
Albert Peete HARRIS
v.
COMMONWEALTH of Virginia.
Record No. 900252.
Supreme Court of Virginia.
January 11, 1991.
*192 C. David Whaley (Elizabeth Dashiell Scher, Morchower, Luxton and Whaley, Richmond, on brief), for appellant.
H. Elizabeth Shaffer, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., on brief), for appellee.
Present: All the Justices.
HASSELL, Justice.
The sole issue that we consider in this appeal is whether a police officer violated the Fourth Amendment's prohibition against unreasonable searches and seizures when he removed a film canister from the defendant's pocket and searched the canister.
On June 16, 1987, an informant notified the Organized Crime Intelligence Section of the Henrico County Police Department that Paul Stanley would be driving a car in Henrico County. The informant reported that the car would contain drugs and that Stanley might have weapons in his possession. Stanley was a fugitive and a warrant for his arrest for a probation violation was outstanding. This information was relayed to Officers Eric T. Von Canon and Ramon A. Jackson, Jr. Officers Von Canon and Jackson were advised by police investigators that they needed to establish their "own reason why ... [they] had suspicion to stop ... [Stanley's] vehicle, regardless of what they [had been] told...." They were instructed not to stop the car unless they observed a traffic violation. Von Canon and Jackson were told to use caution when stopping the car because Stanley might have weapons.
Later that day, Officers Von Canon and Jackson, who were driving separate cars, observed Stanley driving a car on Staples Mill Road in Henrico County. Albert P. Harris was a passenger in the front seat of Stanley's car. Von Canon saw "a lot of overt movement in the vehicle" with its occupants reaching and "bobbing around." The officers could not see what, if anything, was being moved.
The officers stopped Stanley's car because the right brake light was not operating. Von Canon and Jackson reminded each other to be "extremely careful" and to use "extreme caution." Jackson approached Stanley and Von Canon approached Harris. Jackson asked Stanley to get out of the car, confirmed his identity, and arrested him. Von Canon asked Harris to get out of the car because the driver had been arrested and an inventory would be taken of the car's contents. Harris, after being asked twice to get out of the car, refused to move. Von Canon again asked Harris to get out of the car and informed Harris that if he refused, he would be forcibly removed. Harris then got out of the car.
Von Canon frisked Harris for weapons. During the frisk, Von Canon felt a bulge in Harris' pocket. He removed a film canister from Harris' pocket. Von Canon asked Harris, "What's in the film canister?" Harris replied, "Film." Von Canon opened the film canister, and it contained white powder later identified as cocaine. Von Canon arrested Harris and searched him. *193 During this search, Officer Von Canon found another film canister and a small plastic bag. The canister and plastic bag contained white powder later identified as cocaine. Drug paraphernalia was discovered during an inventory search of the car.
Harris was indicted for possession of cocaine with intent to distribute. He moved to suppress the items that Officer Von Canon had seized from him. The trial court denied the motion following an evidentiary hearing. The trial judge, sitting without a jury, convicted Harris of simple possession of cocaine. Harris appealed the judgment to the Court of Appeals of Virginia and it was affirmed. 9 Va.App. 355, 388 S.E.2d 280. We awarded Harris an appeal.
The Commonwealth argues that the officer's search of Harris' film canister was permissible because Von Canon had probable cause to believe that there were illegal drugs and possibly weapons in Stanley's car. We disagree.
The Fourth Amendment of the Constitution of the United States provides in part that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." This inestimable right of personal security belongs to all citizens, whether they are in the comfort of their homes or on the streets of our cities. Terry v. Ohio, 392 U.S. 1, 8-9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968).
The Supreme Court, in Terry, considered the limitations that the Fourth Amendment imposes upon a search by a police officer of a citizen who has been stopped but not arrested. The Court recognized that, in certain circumstances, a police officer is entitled to conduct a limited search of a citizen who has been detained but not arrested. The search is necessary because police officers should not be subjected to danger:
[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.
Id. at 27, 88 S.Ct. at 1883 (citations and footnote omitted).[1]
The Court, cautious not to validate the use of generalized searches of citizens who have not been placed under arrest, emphasized the limited nature and scope of the permissible search:
We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search *194 under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.
Id. at 30-31, 88 S.Ct. at 1884-85.
The Court reiterated the limited scope and nature of a stop and frisk search in Terry`s companion case, Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Sibron was convicted of unlawful possession of heroin. He filed a motion to suppress heroin seized from his person by the arresting officer. The following facts were adduced from the officer during an evidentiary hearing. The officer was patrolling his beat when he observed Sibron converse with six or eight persons whom the officer knew from past experience were narcotic addicts. The officer did not hear any of the conversations, nor did he see any exchange of property between Sibron and any of the other persons. Later that evening, the officer saw Sibron enter a restaurant and speak with three known narcotic addicts. Sibron sat down and began to eat. The officer approached him and told him to come outside. Once outside, the officer said to Sibron, "You know what I am after." Sibron mumbled and reached into his pocket. Simultaneously, the officer thrust his hand into the same pocket and discovered several glassine envelopes which contained heroin. Id. at 45, 88 S.Ct. at 1893.
The Court observed that the officer's statement to Sibron, "[y]ou know what I am after," made it clear that the officer sought narcotics and that he thought there were narcotics, not weapons, in Sibron's pocket. Id. at 64, 88 S.Ct. at 1903. The Court held:
The search for weapons approved in Terry consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault. Only when he discovered such objects did the officer in Terry place his hands in the pockets of the men he searched. In this case, with no attempt at an initial limited exploration for arms [the officer] thrust his hand into Sibron's pocket and took from him envelopes of heroin. His testimony shows that he was looking for narcotics, and he found them. The search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception the protection of the officer by disarming a potentially dangerous man. Such a search violates the guarantee of the Fourth Amendment, which protects the sanctity of the person against unreasonable intrusions on the part of all government agents.
Id. at 65-66, 88 S.Ct. at 1904. See Ybarra v. Illinois, 444 U.S. 85, 93-94, 100 S.Ct. 338, 343, 62 L.Ed.2d 238 (1979) ("Nothing in Terry can be understood to allow a generalized `cursory search for weapons' or, indeed, any search whatever for anything but weapons.")
Certainly, Officer Von Canon was entitled to conduct a limited search of Harris to assure himself that Harris did not have any weapons in his possession which would have endangered the officer's safety. Indeed, the safety of the officer when conducting his duties is of paramount importance. However, Von Canon's seizure and search of the film canister during the weapon search was not permissible because the canister was not a weapon and he did not search the canister for a weapon. Rather, he had a "hunch" that the canister contained illegal drugs and therefore conducted a generalized search. Von Canon gave the following testimony during the evidentiary hearing on the motion to suppress:

Question: [W]hen you patted him [Harris] down for weapons you indicated that you felt a film canister.

Answer: Yes, sir.

Question: You knew that was not a weapon, didn't you?

Answer: That's correct.

Question: And what did you think that was?

Answer: I thought it was probably drugs....

Question: When you felt that film canister, that meant something to you.

*195 Answer: My first reaction was, `this is drugs, it's not film, it's drugs.'
Accordingly, Von Canon's search of Harris should have ceased once Von Canon assured himself that Harris possessed no weapons. See Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) ("The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence."); Lansdown v. Commonwealth, 226 Va. 204, 213, 308 S.E.2d 106, 112 (1983); Simmons v. Commonwealth, 217 Va. 552, 556, 231 S.E.2d 218, 221 (1977); see also United States v. Lott, 870 F.2d 778 (1st Cir.1989) (police may only conduct Terry search when looking for weapons); United States v. Short, 570 F.2d 1051 (D.C.Cir.1978) (Terry search must be limited to weapons).
Next, the Commonwealth argues that Officer Von Canon's search and seizure of the canister was permissible because of the "plain view" exception to the warrant requirement. The Commonwealth argues that Officer Von Canon possessed probable cause to seize the first canister as soon as he recognized it as such and concluded that it contained drugs. Thus, argues the Commonwealth, he was entitled to arrest Harris and lawfully search and seize the second film canister and plastic bag as a search incident to his arrest. We disagree.
The "plain view doctrine" is an exception to the general rule that warrantless searches and seizures are presumptively unreasonable. The Supreme Court, in Horton v. California, ___ U.S. ___, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), stated the predicates which must be established if the government seeks to avail itself of the plain view exception to the Fourth Amendment:
It is ... an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view, its incriminating character must also be `immediately apparent.' Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself.
Id. at 2308 (citations and footnote omitted); see also Blair v. Commonwealth, 225 Va. 483, 489, 303 S.E.2d 881, 886 (1983). Additionally, the police must have probable cause to believe that the item in question is evidence of a crime or is contraband. Arizona v. Hicks, 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987); see also Delong v. Commonwealth, 234 Va. 357, 365, 362 S.E.2d 669, 673 (1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1100, 99 L.Ed.2d 263 (1988) (citing Hicks).
In Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion), the Supreme Court held that a police officer had probable cause to seize and search certain items which were within a police officer's plain view. Tom Maples, a police officer, assisted in conducting a routine driver's license checkpoint in Fort Worth, Texas. Maples stopped a car driven by Clifford Brown and asked for his driver's license. While waiting for Brown to produce his license, Maples shined his flashlight into Brown's car. He observed that Brown had an opaque green party balloon, knotted about one-half inch from the tip "between the two middle fingers of his right hand." Brown dropped the balloon to the seat beside his right leg, reached across the passenger seat, and opened the glove compartment.
Maples shifted his position in order to obtain a better view of the interior of the glove compartment. He noticed that the glove compartment contained several small plastic vials, quantities of loose white powder, and an open bag of party balloons. After rummaging briefly through the glove compartment, Brown informed Maples that he did not have a driver's license in his possession. Maples then asked Brown to get out of the car and stand at its rear. Brown complied. Maples reached into the car and picked up the green balloon. A *196 powdery substance was within the tied-off portion of the balloon. Brown was arrested. Id. at 734, 103 S.Ct. at 1539.
Brown filed a motion to suppress the evidence. During the suppression hearing, a chemist testified that he had examined the substance in the balloon and determined that it was heroin. He also testified that narcotics are frequently packaged in ordinary party balloons. Id. at 734-35, 103 S.Ct. at 1539. The Supreme Court held that the plain view doctrine allowed the officer to seize and search the balloon because the officer had probable cause to believe that it contained an illicit substance. Id. at 742, 103 S.Ct. at 1543. Justices Powell and Blackmun, concurring in the judgment of the Court, observed, "We are not advised of any innocent item that is commonly carried in uninflated, tied-off balloons such as the one Officer Maples seized." Id. at 746, 103 S.Ct. at 1546.
We hold that under the facts and circumstances of this case, the Commonwealth's reliance on Brown is misplaced. Brown is not applicable because the record in this case does not indicate that Von Canon had probable cause to believe that Harris' film canister contained contraband. The evidence contained in this record falls far short of the quantum of proof established in Brown. It is true that Von Canon knew from his personal experience of working "plain clothes assignments" and "making arrests" that certain people kept their narcotics and drugs in film canisters and "things of that nature." However, law-abiding citizens, on a daily basis, also use film canisters to store film, which is a legitimate use. At best, Von Canon had a "hunch" and a report from an informant. However, the record in this case does not contain any evidence that the informant was reliable or credible.[2]See Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983) (such evidence "may usefully illuminate the ... question whether there is `probable cause'").
The gist of the Commonwealth's argument was recently considered and rejected by the Supreme Court in Smith v. Ohio, ___ U.S. ___, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990). Smith was approached by two plain clothes police officers while he was carrying a brown paper grocery bag in a manner that the officers described as "gingerly." One of the officers, without identifying himself, asked Smith to "come here for a minute." Smith ignored the officer. When the officer identified himself as a policeman, Smith threw the bag on the hood of his car and turned toward the officer who was approaching him. The officer asked Smith about the bag's contents. Smith did not respond. The officer rebuffed Smith's attempt to protect the bag, pushed Smith's hand away, and opened the bag. Drug paraphernalia was discovered and Smith was arrested and convicted for drug abuse. Id. at 1289. The Supreme Court observed that "[n]o contention has been raised in this case that the officer's reaching for the bag involved a self-protective action necessary for the officer's safety." Id. The Court stated, "As we have had occasion in the past to observe, `[it] is axiomatic that an incident search may not precede an arrest and serve as part of its justification.'" Id. at 1290 (citations omitted).
The trial court should have granted the motion to suppress the items that Von Canon removed from Harris' pocket because Von Canon exceeded the scope of the permissible Terry search and the officer lacked probable cause to seize and search the film canister. Accordingly, the judgment of the Court of Appeals will be reversed and this case will be remanded to the Court of Appeals with directions to *197 remand the case to the trial court for a new trial if the Commonwealth so advises.
Reversed and remanded.
RUSSELL, J., files a dissenting opinion in which CARRICO, C.J., and WHITING, J., join.
RUSSELL, Justice, with whom CARRICO, Chief Justice, and WHITING, Justice, join, dissenting.
The majority opinion, in my view, expands the Fourth Amendment protections afforded criminal suspects to a degree considerably beyond the requirements of our prior decisions and those of the Supreme Court of the United States. I think the information in the police officer's possession amounted to probable cause to arrest the defendant, to make a search of his person incident to the arrest, and to seize the contraband found on his person.
In Lawson v. Commonwealth, 217 Va. 354, 228 S.E.2d 685 (1976), the police received a call from an unidentified informant that the defendant and another man were selling heroin at the Hampton Institute. The informant also described the car the two men were using. The police were unable to find the car at the Hampton Institute, but encountered it later, stopped at a red light in the city. The police had no search warrant. An officer approached the car on the passenger side, where the defendant was sitting. The defendant locked the door and passed a yellow envelope to the driver, who threw it to the floor.[*] The officer demanded that the door be opened. He reached inside, retrieved the envelope, and opened it. It contained marijuana. The defendant was searched, and the police found another envelope in the defendant's pocket. It was opened and found to contain six pieces of folded aluminum foil, each of which was opened and found to contain heroin. Id. at 355-56, 228 S.E.2d at 685-86. The defendant was convicted of narcotics possession.
Affirming the conviction, we said:
If [the police officer] had probable cause to believe that there was contraband in the yellow envelope, he had the right to seize it, and, when its contents appeared to be marijuana, to arrest Lawson for its possession. Incident to this arrest the officer also had a right to make a search of Lawson's person and to seize the foil packets.
Id. at 356, 228 S.E.2d at 686.
In deciding that the officer had probable cause to believe that there was contraband in the yellow envelope, we noted that the informant's tip was insufficient, standing alone, to support the issuance of a warrant or to justify a warrantless search of the car. However, it gave the officer an "articulable reason" to make "an investigative confrontation" with the defendant. Id. at 357, 228 S.E.2d at 687. Indeed, the officer had a duty to investigate a reported crime. In the course of that confrontation, circumstances occurred which were strikingly similar to those in the present case: there, as here, the identity of the car and its occupants confirmed the informant's "tip"; there, as here, the occupants behaved furtively when the police approached the car, suggesting efforts at concealment; there, as here, the defendant resisted the officer's efforts to remove him from the car; there, as here, the officers' investigations produced opaque containers of a kind which the officers knew, from long police experience, were commonly used to contain illegal drugs. We held, in Lawson, that the "totality of the circumstances" constituted probable cause. Id. at 358, 228 S.E.2d at 687.
In Lawson, we expressly overruled Oglesby v. Commonwealth, 213 Va. 247, 191 S.E.2d 216 (1972), decided four years earlier. Lawson, 217 Va. at 358, 228 S.E.2d at 687. Oglesby had reached the opposite conclusion concerning an opaque container of a type usually used for legitimate purposes but also known by police to be frequently used for the concealment of narcotics. The decision in Lawson was unanimous, yet the majority's opinion today *198 has the effect of overruling Lawson and reinstating Oglesby, without mentioning either one.
Lawson followed and quoted Hollis v. Commonwealth, 216 Va. 874, 223 S.E.2d 887 (1976), where we said:
As an articulated legal standard, probable cause deals with probabilities concerning the factual and practical considerations in everyday life as perceived by reasonable and prudent persons. It is not predicated upon a clinical analysis applied by legal technicians. Brinegar v. United States, 338 U.S. 160 [69 S.Ct. 1302, 93 L.Ed. 1879] (1949); Schaum v. Commonwealth, 215 Va. 498, 211 S.E.2d 73 (1975). In determining whether probable cause exists courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control. Davis v. United States, 409 F.2d 458 (D.C.Cir.1969).
Hollis, 216 Va. at 876-77, 223 S.E.2d at 889.
It would, of course, be necessary to alter our long-held views on this subject if they were at variance with those of the Supreme Court of the United States. But, far from refuting those views, that Court has amply reinforced them.
In Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), discussed at length in the majority opinion, there was one point upon which all nine justices, in three separate opinions, agreed: when the police, in the course of a lawful investigation, come upon an opaque container known by them to be of a kind commonly used for the concealment of contraband, they may seize it under the "plain view" exception to the Fourth Amendment warrant requirement. This is true even though they cannot be sure of the container's contents. The decision of the Texas Court of Criminal Appeals, which had articulated the same standard as that espoused by the majority in the present case, was unanimously reversed.
In Brown, four justices joined in an opinion which said that "if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately." 460 U.S. at 739, 103 S.Ct. at 1542. The Texas court had opined that the officers could not avail themselves of the "plain view" exception unless the incriminating nature of the object to be seized was "immediately apparent." The Supreme Court disagreed, stating, in the plurality opinion, that "probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would `warrant a man of reasonable caution in the belief' ... that certain items may be contraband ... it does not demand any showing that such a belief be correct or more likely true than false." 460 U.S. at 742, 103 S.Ct. at 1543 (emphasis added) (citation omitted).
Justice Powell, with whom Justice Blackmun joined, concurred with the view that probable cause existed for the seizure of the suspicious object, a tied-off party balloon, because of the officers' knowledge that such balloons are commonly used to carry illegal drugs. 460 U.S. at 746, 103 S.Ct. at 1545. Justice Stevens, with whom Justices Brennan and Marshall joined, also concurred in the decision that the "plain view" exception justified seizure of the balloon, even though the contents were not visible. 460 U.S. at 747, 103 S.Ct. at 1546. Those justices, however, were of opinion that the closed container should, after seizure, have been kept closed until a search warrant to examine its contents was obtained. 460 U.S. at 750, 103 S.Ct. at 1547. This case, like Brown, rests entirely upon the Fourth Amendment to the federal constitution, but no member of the Brown Court expressed the views contained in the majority opinion in the present case.
Here, no contention is made that there was any constitutional infirmity in the Terry search or in the actions of the police which led up to it. In the course of that lawful search, officer Von Canon encountered an opaque container in the defendant's pocket. His immediate conclusion, based upon all that had occurred up to that time, and based upon his experience as a police officer, was that it contained illegal drugs. He had, at that moment, under the *199 "totality of the circumstances," probable cause to believe that a felony was being committed in his presence. He had not only the authority, but the duty, to seize the suspected contraband and to arrest the defendant.
Accordingly, I would affirm.
NOTES
[1] The Court, in Terry, restated its holding that the only permissible purpose for the search of a citizen who has been stopped but not arrested is for the protection of the police officer: "The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." 392 U.S. at 29, 88 S.Ct. at 1884.
[2] The dissent, relying upon Lawson v. Commonwealth, 217 Va. 354, 228 S.E.2d 685 (1976), argues that Von Canon had probable cause to search and seize the canister. Lawson is not applicable. In Lawson, we held that a detective had probable cause to search a suspect because, among other reasons, the detective was able to verify, personally, detailed information that he had received from an unidentified informant. 217 Va. at 358, 228 S.E.2d at 687. Here, however, the police officers were specifically instructed that they could not rely upon the information provided by the informant. Rather, the officers were told they should not stop the car in which Harris was a passenger unless they observed a traffic violation.
[*] The officer could not see the contents of the envelope, but testified that it looked to him like a "nickel bag of marijuana." Lawson, 217 Va. at 355, 228 S.E.2d at 686.