## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Commonwealth of Virginia

v.

Richard Karl Braun

October 29, 1992

Case Nos. 92-CRC-277 and 92-CRC-278

BY JUDGE WILLIAM H. LEDBETTER, JR.

On the evening of May 20, 1992, as State Trooper P. D. Watts approached a stop sign at Route 621 in Spotsylvania County, he observed a 1967 Ford operated by the defendant, Richard Karl Braun. The vehicle was stopped at the stop sign in front of Trooper Watts. Braun then accelerated at high speed. The officer noticed Braun's unusually rapid departure from the stop sign; he also noticed that Braun's rear license plate was not illuminated as required by law. He gave pursuit. Braun did not stop until he arrived at his parents' home just off Route 621, in a rather rural area of the County. As the officer pulled into the driveway to confront Braun, Braun exited his vehicle. A book fell from Braun's pocket. When Trooper Watts picked up the book, he noticed names, numbers beside the names, and other data. Braun explained that this was his "gambling book" and that he had friends that gambled.

Trooper Watts then began to question Braun and asked for his operator's license, etc. Braun appeared somewhat intoxicated and extremely nervous. His jittery movements and his constant touching of the officer as they talked made the officer nervous. Thus, he asked Braun what he had in his pockets. Braun replied that he had keys in his pocket. Trooper Watts patted the other pants pocket and felt an object. When questioned about that object, Braun produced a small pocket knife. The officer took the knife from Braun and at some point detected an odor of marijuana. He opened the knife and ob-

served on the blade a tar-like substance that he suspected to be marijuana residue.

After this exchange, Trooper Watts asked permission to search the vehicle. Braun told him that he could search the house and the trunk of the car, but a search of the car's interior would "offend him." He said this twice. Nevertheless, the officer opened the front door of the vehicle and began a general search. Because Braun was still moving around in a nervous, albeit nonaggressive, manner, Trooper Watts called for back-up. At that point, with the officer partially in the car conducting the search and Braun standing outside on the other side of the car, Braun uttered a profanity and voluntarily directed the officer to a package of marijuana hidden behind the front seat. Braun was then arrested, advised of his *Miranda* rights, and made several incriminating statements to Trooper Watts.

The initial stop, premised upon a traffic violation observed by the officer, was proper. Consistent with that legitimate action, especially in light of the location of the stop, the time of the day, and Braun's nervous behavior, the officer had a right to conduct a pat-down for weapons. *Terry v. Ohio*, 392 U.S. 1 (1968). The search permitted by *Terry* and its progeny is limited. Because there is no probable cause to arrest the individual, the police officer is authorized to conduct a reasonable search of the outer clothing in order to protect himself and others from danger while he proceeds with his investigatory stop.

In this case, Trooper Watts found a weapon, a small pocket knife. Braun surrendered it to him. A pocket knife can be considered a weapon; thus, the officer had every right to hold it while he carried out his police work relative to the traffic stop. However, an ordinary pocket knife, without more, does not signal criminal activity and would not of itself arouse suspicions or justify further police reaction. Here, however, the officer testified that he detected and observed a tar-like substance on the blade. To make these determinations, it is clear that the officer had to do more with the knife than take it from the suspect. At the least, he opened it, examined it, and smelled it.

The Supreme Court, in *Terry*, was careful not to validate the use of generalized searches of persons who have not been placed under arrest. The limited nature and scope of a "Terry search" (sometimes referred to as "stop and frisk") was emphasized. The officer is entitled to protect himself and others in the area by conducting a limited

pat-down of outer clothing in an attempt to discover weapons. If weapons are found, they may be seized. *Terry* at 30–31.

In *Harris v. Commonwealth*, 241 Va. 146 (1991), the Supreme Court of Virginia reiterated these principles. When an officer found a film canister on the suspect, during the course of a *Terry* pat-down, the Court upheld the pat-down. But when the officer opened the canister, on a "hunch" that it contained illegal drugs, the Court found that the officer had conducted a generalized search and held that the trial court should have suppressed the fruits of that search.

Similarly, Trooper Watts's conduct with respect to the pocket knife (possession of which is *not* illegal in Virginia) amounted to a generalized search. He did not seize the knife for self-protection; instead, he decided to search it and thereby found what he suspected to be marijuana residue on the blade, a finding that the Commonwealth now argues justified a thorough search of Braun's vehicle.

For the reasons stated, the court is of the opinion that the search of the pocket knife was not permissible in connection with a *Terry* pat-down. Further, even if the knife revealed to the officer's senses, in "plain view," evidence of marijuana, a general search of the vehicle was improper at that point because the officer had made no arrest, obviously under the impression that he had no probable cause to believe that Braun had committed a crime or was in possession of contraband.

The Commonwealth asks the court to consider the dropped book as further justification for the officer's search of the automobile. Although Trooper Watts explained his expertise as a trained narcotics officer later in his testimony, he did not relate that expertise to the meaning of the names and numbers in the book or how the inadvertent discovery of that information motivated or triggered his decision to search Braun's car.

In sum, the court finds that the stop and the pat-down were valid exercises of police discretion, compatible with the constitutional protections against unreasonable search and seizure, but the court further finds that the officer's warrantless search of Braun's vehicle was nonconsensual, exceeded the bounds of a permissible *Terry* search, and was without probable cause. Accordingly, the evidence seized must be suppressed. Braun's motion is granted.

Braun is scheduled to be tried by jury on November 25, 1992, on indictments charging possession of marijuana with intent to distribute and possession of cocaine (cocaine residue was discovered on the

knife blade by the forensic laboratory). The Commonwealth should advise the court and counsel promptly whether, in light of this decision, it will proceed with trial or move to nol pros the charges.