COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Bumgardner
Argued at Richmond, Virginia


COMMONWEALTH OF VIRGINIA
                                    MEMORANDUM OPINION* BY
v.    Record No. 0131-01-1       JUDGE RUDOLPH BUMGARDNER, III
                                         JUNE 11, 2001
DANTE RODRIQUEZ GAY, S/K/A
 DONTE GAY


              FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
                      Rodham T. Delk, Jr., Judge

            Shelly R. James, Assistant Attorney General
            (Mark L. Earley, Attorney General, on
            briefs), for appellant.

            Patrick A. Paciello (Robert O'Neill, Public
            Defender, on brief), for appellee.


     Dante Rodriquez Gay moved to suppress introduction of a

crack pipe taken from his person.  The trial court granted the

motion, and the Commonwealth appeals.  We conclude the

Commonwealth lawfully seized the item under the "plain feel"

doctrine and reverse its suppression.

     We review the evidence in the light most favorable to the

defendant.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067,

407 S.E.2d 47, 48 (1991).  While on routine patrol, a Franklin

City police officer observed a beer can on the roof of a parked

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

car.  He turned to investigate and saw the defendant put the beer inside the car.  The officer parked his car near the defendant and asked him about the beer.

The defendant agreed to a pat-down search by the officer. Having placed his hands on the roof of the car, but before the pat-down began, the defendant thrust his hand to a side pocket of his pants.  The movement made the officer believe the defendant had a weapon or contraband in his pocket, so he patted the pocket.  The officer immediately felt what he perceived to be a crack pipe.  The experienced officer had felt similar objects, and they always proved to be crack pipes.[1]  He reached into the defendant's pocket and extracted a brass tube burned on the end that tested positive for cocaine.  The defendant concedes the initial encounter and the pat-down were proper.

The trial court found the officer immediately concluded on patting the pants pocket that the object was a crack smoking device.  That meant he also immediately concluded the object was not a weapon.  The trial court ruled:  "In this particular case I find that [the officer] exceeded the authority of Terry and the similar cases."

---

[1] Officer Harvey testified that in thirteen years as an officer, he had handled approximately 230 drug arrests and that he often found coke stems in pencil pockets.  "In the past when I felt an item like that in a pocket and I went in and got it, it has always been a crack stem."

-

Minnesota v. Dickerson, 508 U.S. 366, 375 (1993), extended the plain view doctrine of Coolidge v. New Hampshire, 403 U.S. 443, 466 (1971), to "tactile discoveries of contraband" and approved the plain feel doctrine. The Court stated the issue in Dickerson: "whether police officers may seize nonthreatening contraband detected during a protective patdown search [for weapons] of the sort permitted by Terry [v. Ohio, 392 U.S. 1 (1968)]. We think the answer is clearly that they may, so long as the officer's search stays within the bounds marked by Terry." 508 U.S. at 373.

The officer immediately identified the object as a crack pipe, which the defendant concedes has no use except to consume crack cocaine. It was drug paraphernalia, Code § 18.2-265.1,[2] and subject to seizure and confiscation. Code § 18.2-265.4.[3] If an officer discovers "contraband other than weapons [during a search for weapons], he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." Michigan v. Long, 463 U.S. 1032, 1050 (1983).

---

[2] "'[D]rug paraphernalia' means all . . . materials of any kind which are . . . designed for use . . . in . . . ingesting, inhaling, or otherwise introducing into the human body marijuana or a controlled substance." Code § 18.2-265.1.

[3] "All drug paraphernalia as defined in this article shall be forfeited to the Commonwealth and may be seized . . . ." Code § 18.2-265.4.

-

Under the plain feel doctrine, the officer was not limited to seizing weapons.  He seized the evidence lawfully. Accordingly, we reverse its suppression.

Reversed and remanded.

Benton, J., dissenting.

Applying the usual standard of review, we must view the evidence in the light most favorable to Dante Gay, the prevailing party, and grant to that evidence all reasonable inferences fairly deducible therefrom. See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). Moreover, "[i]n our review, 'we are bound by the trial [judge's] findings of historical fact unless "plainly wrong" or without evidence to support them.'" Harris v. Commonwealth, 33 Va. App. 325, 330, 533 S.E.2d 18, 20 (2000) (citation omitted).

The trial judge made the following findings in suppressing the evidence:

> This particular case . . . involved an encounter between the officer and the defendant, [and] was triggered by a beer can on the roof of a car. There was conversation. It's not an issue that -- whether this was a valid Terry stop or not is not an issue. The stop -- the encounter was proper. And the patdown for weapons was proper. But I'll note in the patdown, whether it was once or twice that the defendant moved, when he had his two hands on the car, the defendant, when the officer got on his side near his pencil pocket, the defendant once or twice moved his hand down to the pencil pocket.
>
> I did take this note. On December 12. And I specifically recall this testimony. The officer concluded that the defendant moved his arm to the pocket and I made this quote, that it was either a weapon or drugs. That was his comment.

-

He patted down and immediately concluded that the object that he felt -- I don't think he used the word cylindrical. But it was round and about three inches long. Was a crack smoking device without even seeing it. This he concluded from his training and his experience in dealing with drugs.

But the context of this entire matter was not about drugs. He was proper in making the patdown. But once he concluded in this particular case that -- and this was an immediate conclusion, not after pulling it out to see if it was a weapon or not. It was his immediate conclusion that it was not a weapon.

In this particular case I find that he exceeded the authority of Terry and the similar cases. I've read a number of Virginia cases. I've even read Ruffin [v. Commonwealth, 13 Va. App. 206, 409 S.E.2d 177 (1991), a case relied on by the prosecutor]. I don't find that Ruffin permits the seizure that occurred in this case under these facts. Therefore I hold that the seizure was in violation of the Fourth Amendment. I'll order that the evidence be suppressed. I'll note the Commonwealth's exception.

In Harris v. Commonwealth, 241 Va. 146, 400 S.E.2d 191 (1991), a police officer stopped a vehicle for an equipment violation after an informant had reported the vehicle would contain drugs. Id. at 148, 400 S.E.2d at 192. During a frisk of the passenger for weapons, the officer detected a film container, which he removed and searched. Id. The Supreme Court specifically noted that the officer "knew from his personal experience of working 'plain clothes assignments' and 'making arrests' that certain people kept their narcotics and

-

drugs in film canisters."  Id. at 154, 400 S.E.2d at 196.

Nonetheless, the Court rejected the Commonwealth's argument that

the seizure of the canister and the search of it were lawful,

and the Court ruled as follows:

> Certainly, [the] Officer . . . was entitled
> to conduct a limited search of Harris to
> assure himself that Harris did not have any
> weapons in his possession which would have
> endangered the officer's safety.  Indeed,
> the safety of the officer when conducting
> his duties is of paramount importance.
> However, [the officer's] seizure and search
> of the film canister during the weapon
> search was not permissible because the
> canister was not a weapon and he did not
> search the canister for a weapon.  Rather,
> he had a "hunch" that the canister contained
> illegal drugs and therefore conducted a
> generalized search.  [The officer] gave the
> following testimony during the evidentiary
> hearing on the motion to suppress:
>
> Question:  [W]hen you patted him [Harris]
> down for weapons you indicated that you felt
> a film canister.
>
> Answer:  Yes, sir.
>
> Question:  You knew that was not a weapon,
> didn't you?
>
> Answer:  That's correct.
>
> Question:  And what did you think that was?
>
> Answer:  I thought it was probably drugs
> . . . .
>
> Question:  When you felt that film canister,
> that meant something to you.
>
> Answer:  My first reaction was, 'this is
> drugs, it's not film, it's drugs.'

-

>             Accordingly, [the officer's] search of
>             Harris should have ceased once [the officer]
>             assured himself that Harris possessed no
>             weapons.

Id. at 151-52, 400 S.E.2d at 194-95.

The evidence in this case is not significantly different. The officer testified that Gay was wearing "jeans and they have a long, skinny pocket down the side, down around the thigh area," which the officer described as "like a handyman would wear." The officer testified that he frisked the "pencil pocket on the right side of his pants" and "felt a hard metal item around three inches long." As in Harris, the officer in this case testified that he knew the item he felt in Gay's pocket was not a weapon. Based on this testimony, the trial judge found that "[i]t was [the officer's] immediate conclusion that it was not a weapon." Similarly, as in Harris, the officer in this case testified that his experience and training led him to believe the item he felt in Gay's pocket was used for smoking cocaine. Based on this testimony, the trial judge found that the officer "immediately concluded that the object . . . he felt . . . [w]as a crack smoking device without even seeing it."

In short, the trial judge found that the officer's detection of a metal item three inches long, which he knew not to be a weapon and which he concluded was contraband without seeing it, was an unlawful seizure. The item was not intrinsically contraband; it only could be considered

-

paraphernalia if it had a connection to controlled substances.

See Code §§ 18.2-265.1, 18.2-265.2, and 18.2-265.3. Indeed, the trial judge specifically found that "the context of this entire matter was not about drugs." He also implicitly found that the incriminating character of the object, i.e., that it was "a crack smoking device," could not have been immediately apparent to the officer without seeing it.

> Where, as here, "an officer who is executing a valid search for one item seizes a different item," this Court rightly "has been sensitive to the danger . . . that officers will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will." Here, the officer's continued exploration of [the accused's] pocket after having concluded that it contained no weapon was unrelated to "[t]he sole justification of the search [under Terry:] . . . the protection of the police officer and others nearby." It therefore amounted to the sort of evidentiary search that Terry expressly refused to authorize, and that we have condemned in subsequent cases.

Minnesota v. Dickerson, 508 U.S. 366, 378 (1993) (citation omitted).

The trial judge's findings support his suppression order, which was analogous to the Supreme Court's ruling in Harris concerning the film canister. The officer's sense of feel objectively conveyed only an item that was consistent with a dowel or rod that might be carried in the pencil pocket of jeans "like a handyman would wear." The trial judge correctly

-

concluded that the officer "exceeded the authority of Terry" when he removed the item. See Dickerson, 508 U.S. at 378 (noting that the officer's conduct "amounted to the sort of evidentiary search that Terry expressly refused to authorize"). As the trial judge noted, the officer's conclusion that the item had no legitimate use, "without even seeing [the item]," was a mere hunch. See Harris, 241 Va. at 154, 400 S.E.2d at 196 (noting that the officer's experience only permitted a "hunch" that a film canister, which has a legitimate use, was actually a storage container for cocaine). After merely feeling the object, the officer, at best, could only have had an ungrounded suspicion that the item was cocaine paraphernalia. Acting on his hunch, the officer retrieved the item and determined that the item was probably a device for using cocaine only after seeing that it was hollow and contained a residue. Because the officer did not have probable cause to conclude that the item was contraband and because he knew it was not a weapon, he had no authority to remove it during a Terry detention for weapons.

In Arizona v. Hicks, 480 U.S. 321 (1987), a police officer, who was searching for weapons, saw an item he believed to be stolen contraband and moved it to expose serial numbers. Id. at 323. Upholding an order suppressing the seizure, the Supreme Court ruled as follows:

> But taking action, unrelated to the
> objectives of the authorized intrusion,
> which exposed to view concealed . . .

-

contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry. This is why . . . the "distinction between 'looking' at a suspicious object in plain view and 'moving' it even a few inches" is much more than trivial for purposes of the Fourth Amendment. . . . A search is a search, even if it happens to disclose nothing but the bottom of a turntable.

Id. at 325. Significantly, the Court ruled that a police officer must have probable cause, not merely reasonable suspicion, to believe that the discovery of an item during a search, which was not the focus of the search, is evidence of a crime or is contraband. Id. at 326.

I believe that the trial judge's factual findings and the reasonable inferences that flow from those findings support his conclusion that the seizure of the item from Gay's pocket was based upon an ungrounded suspicion and, therefore, was unlawful. Accordingly, I dissent.