COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Kelsey and Beales
Argued at Chesapeake, Virginia


DARRIO L. COST

                                                            OPINION BY
v.        Record No. 2835-05-1                   JUDGE ROBERT P. FRANK
                                                        DECEMBER 28, 2006

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Johnny E. Morrison, Judge

Sonya Weaver Roots (Weaver Law Offices, on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Darrio L. Cost, appellant, was convicted, in a bench trial, of possession with the intent to

distribute heroin, in violation of Code § 18.2-248.  On appeal, he contends the trial court erred in

finding the evidence sufficient to prove intent and erred in finding the seizure of twenty capsules

of heroin after a pat down did not violate appellant's Fourth Amendment rights.  For the reasons

stated, we affirm the judgment of the trial court.

BACKGROUND

Portsmouth Police Officer B.C. Davis approached appellant, who was sitting in the

passenger's seat of a vehicle in the parking lot for residents of a public housing property.  The

officer was investigating whether the occupants in the car were residents of the property.

When Officer Davis arrived at the window, appellant "immediately reached across his

body towards his left front pants pocket."  Davis asked him what he was reaching for, but

appellant did not respond.  The officer "told him to get away from his pocket.  He did that

another time at which point [Davis] got him out of the vehicle."

Appellant immediately said, "You can't search me, but you can pat me down." The officer first patted down appellant's left front pocket, the same pocket appellant had earlier reached for. Officer Davis immediately felt numerous capsules. He felt a "large bulge" and within that "large bulge" he felt what he believed to be heroin capsules, based on his training and experience. Officer Davis had made 50-60 arrests involving heroin capsules over 4-1/2 years as a police officer. He had also attended several narcotics classes.

Believing the capsules to contain heroin, Officer Davis reached into appellant's pocket and retrieved a baggie containing twenty capsules of heroin, with a total weight of 1.7 grams. The baggie was found on top of a large wad of money, consisting of a twenty-dollar bill and 108 one-dollar bills. In another pocket, the officer found 5 ten-dollar bills.

On cross-examination, Davis testified the capsules could have contained over-the-counter legal drugs such as Motrin or Tylenol, but emphasized he knew it was heroin. He had "never arrested anybody with Motrin in their pocket."

Detective R.M. Holley qualified as an expert witness in packaging and distribution of narcotics. He indicated one would normally not find ingesting devices with heroin because a user would simply open the capsule and ingest the heroin. A heavy user might use an average of five capsules a day, thus, twenty capsules would represent three to five days use. However, the detective indicated a heavy user "wouldn't necessarily carry their stash with them." The number of capsules, when viewed with the denominations of the cash found on appellant, led Detective Holley to conclude that "it's inconsistent with personal use." Holley did characterize these circumstances as "fairly borderline."

Additionally, Holley considered the fact that $50 cash was found in one pocket and $128 cash was found in the other pocket. He testified that it is the practice of drug sellers to separate sale proceeds in separate pockets. Holley also indicated that, since a capsule of heroin sells for

$10, the 5 ten-dollar bills are relevant to a determination of whether appellant's possession was inconsistent with personal use. Detective Holley indicated the 108 one-dollar bills are also "fairly consistent with something other than personal use . . . ." Since the arrest occurred on December 14, a day before normal payday, the large quantity of one-dollar bills indicated purchasers are "scraping."

This appeal follows.

## ANALYSIS

### Probable Cause

On appeal, appellant first contends the police exceeded the scope of the "pat down"[1] by seizing the capsules found in his pocket. Specifically, he argues that when the police felt the capsules, it was not immediately apparent that the capsules were contraband, concluding the police had no probable cause to seize the contents of his pocket. Appellant maintains that the seizure of the capsules was unconstitutional and should have been suppressed.

In reviewing a trial court's denial of a motion to suppress, "[t]he burden is upon [appellant] to show that this ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error." Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980). Determining whether police may make a warrantless search or seizure involves issues of both law and fact and is reviewed *de novo* on appeal. See Ornelas v. United States, 517 U.S. 690, 696-97 (1996) (articulating standard for reviewing determinations of reasonable suspicion and probable cause). However, "[i]n performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident

---

[1] Appellant does not contest the validity of the pat down.

judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198,

487 S.E.2d 259, 261 (1997) (*en banc*) (citing Ornelas, 517 U.S. at 699).

> During an investigative stop authorized under Terry [v.
> Ohio, 392 U.S. 1 (1968)], an officer may conduct a limited search
> for concealed weapons if the officer reasonably believes that a
> criminal suspect may be armed and dangerous. The purpose of this
> "pat down" search is not to uncover evidence of criminal activity,
> but to permit the officer to conduct his investigation without
> encountering a violent response.

Murphy v. Commonwealth, 264 Va. 568, 573-74, 570 S.E.2d 836, 839 (2002) (citations

omitted).

In Minnesota v. Dickerson, 508 U.S. 366 (1993), the Supreme Court discussed the

seizure of contraband detected by sense of touch during a "pat down" search. The Court stated:

> If a police officer lawfully pats down a suspect's outer clothing
> and feels an object whose contour or mass makes its identity
> immediately apparent, there has been no invasion of the suspect's
> privacy beyond that already authorized by the officer's search for
> weapons; if the object is contraband, its warrantless seizure would
> be justified by the same practical considerations that inhere in the
> plain-view context.

Id. at 375-76. "However, when the character of the item is not immediately apparent from the

'pat down' search, and the officer does not reasonably suspect that the item is a weapon, further

search regarding the item is not allowed because such an evidentiary search is unrelated to the

justification for the frisk." Murphy, 264 Va. at 574, 570 S.E.2d at 839. Additionally, the police

must have probable cause to believe that the item in question is evidence of a crime or is

contraband. Arizona v. Hicks, 480 U.S. 321, 326 (1987).

> The legal standard of probable cause, as the term suggests,
> relates to probabilities that are based upon the factual and practical
> considerations in everyday life as perceived by reasonable and
> prudent persons. The presence or absence of probable cause is not
> to be examined from the perspective of a legal technician. Rather,
> probable cause exists when the facts and circumstances within the
> officer's knowledge, and of which he has reasonably trustworthy

information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed.

Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981).

"In determining whether probable cause exists[,] courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control." Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976). "'Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" Boyd v. Commonwealth, 12 Va. App. 179, 188-89, 402 S.E.2d 914, 920 (1991) (quoting Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983)). Moreover, an investigating officer does not have to "deal with hard certainties, but with probabilities," and is permitted to make "common-sense conclusions about human behavior" in assessing a situation. Texas v. Brown, 460 U.S. 730, 742 (1983).

Thus, the narrow issue before us is whether the police, based on the totality of the circumstances, had probable cause to believe the capsules contained an illicit drug.

Appellant relies on Murphy, 264 Va. 568, 570 S.E.2d 836, to support his argument. In Murphy, during a "pat down," Officer Harvey felt a plastic bag, which, based on the officer's training and experience, led him to believe it contained marijuana. Id. at 571, 570 S.E.2d at 837. The officer then removed the plastic bag, which, in fact, contained marijuana. Id. The Supreme Court reversed Murphy's conviction, holding:

> Harvey's testimony established only that the character of the object as a plastic bag was immediately apparent from the "pat down" search, and that he knew from his training and experience that plastic bags often are used to package marijuana. This information was insufficient under the holding in Dickerson to establish probable cause to search Murphy's pocket because Harvey's conclusion that the bag contained marijuana was not based on his tactile perception of the bag's contents. Rather, his sense of touch revealed only that there was a plastic bag in Murphy's pocket. Thus, Officer Harvey lacked probable cause to seize the item from

- 5 -

Murphy's pocket because the character of the bag's contents as contraband was not immediately apparent from the frisk.

Id. at 574-75, 570 S.E.2d at 839.

Similarly, in Harris v. Commonwealth, 241 Va. 146, 400 S.E.2d 191 (1991), the police officer patted down Harris, and felt a film canister that he believed contained illegal drugs. The officer seized the canister, opened it, and found illegal drugs. Id. at 148, 400 S.E.2d at 192. In finding the officer did not have probable cause during the pat down to believe the canister contained illegal drugs, the Supreme Court held:

> [The officer] knew from his personal experience of working "plain clothes assignments" and "making arrests" that certain people kept their narcotics and drugs in film canisters and "things of that nature." However, law-abiding citizens, on a daily basis, also use film canisters to store film, which is a legitimate use. At best, [the officer] had a "hunch" and a report from an informant. However, the record in this case does not contain any evidence that the informant was reliable or credible. See Illinois v. Gates, 462 U.S. 213, 230 (1983) (such evidence "may usefully illuminate the . . . question whether there is 'probable cause'").

Id. at 154, 400 S.E.2d at 196 (footnote omitted).

The Commonwealth urges us to distinguish Murphy on its facts. The Commonwealth argues that unlike Murphy, Officer Davis immediately recognized the items as capsules of heroin similar to those he detected in his 50-60 prior heroin capsule arrests. The Commonwealth contends that rather than simply feeling a plastic bag as in Murphy, Davis felt numerous capsules which he knew to be heroin.

In Murphy and Harris, the only issue before the Supreme Court of Virginia was whether it was immediately apparent to the officers that the plastic bag or the film canister contained illicit drugs. In Murphy, the officer's conclusion that the bag contained marijuana was not based on his tactile perception of the bag's contents. Rather, his sense of touch revealed only that there was a plastic bag in Murphy's pocket. Murphy, 264 Va. at 574, 570 S.E.2d at 839. Here, the

officer actually felt the numerous capsules, which he knew to be contraband. A plastic bag could accommodate any number of items, whereas a capsule, by its nature, is an individual container designed solely for dispensing a prearranged dosage of medication. In addition, there was no evidence of furtive gestures in <u>Murphy</u> or <u>Harris</u>. In <u>Harris</u>, although there was evidence that the officer saw "'a lot of overt movement in the vehicle' with its occupants reaching and 'bobbing around'" and Harris refused to get out of the vehicle, 241 Va. at 148, 400 S.E.2d at 192, these facts were not part of the Supreme Court's analysis. Rather, the analysis was premised on the officer's "hunch" that the canister contained illegal drugs. <u>Id.</u> at 154, 400 S.E.2d at 196.

However, in the instant case, when the officer approached appellant, he "immediately reached across his body towards his left front pants pocket." When asked what he was reaching for, appellant did not respond. The officer told appellant to "get away from the pocket," and appellant again reached toward his left front pocket.

In determining whether there was probable cause to seize the capsules located in the same pocket appellant reached for, the trial court could properly infer appellant was attempting to conceal the illegal contents of that pocket. <u>See</u> <u>Parker v. Commonwealth</u>, 255 Va. 96, 107, 496 S.E.2d 47, 53 (1998) (noting appellant's act of grabbing the waistband of his boxer shorts and pulling them "to the side, up and down" in an apparent effort to prevent the crack cocaine from falling to the ground was a consideration in evaluating whether the arresting officer had probable cause that appellant was engaged in criminal activity).

> Furtive gestures alone have been held insufficient to establish probable cause. <u>See</u> <u>People v. Superior Court</u>, 478 P.2d 449, 454-55 (Cal. 1970) (explaining why mere furtive gestures, without more, do not establish probable cause). However, furtive gestures coupled with other indicia of criminal engagement may suffice to establish probable cause. <u>See</u> <u>Sibron v. New York</u>, 392 U.S. 40, 66 (1968) (noting that "deliberately furtive actions . . . at the approach of strangers or law officers are strong indicia of *mens rea*, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are

- 7 -

> proper factors to be considered in a decision to make an arrest"
> (emphasis added)); 2 Wayne R. LaFave, Search and Seizure
> § 3.6(d), at 319 (3d. ed. 1996) ("if police see a person in
> possession of a highly suspicious object or some object which is
> not identifiable but which because of other circumstances is
> reasonably suspected to be contraband, *and then* observe that
> person make an apparent attempt to conceal that object . . . ,
> probable cause is then present" (emphasis added)).

Copeland v. Commonwealth, 42 Va. App. 424, 434, 592 S.E.2d 391, 395-96 (2004).

In addition to appellant reaching over to the same pocket containing the capsules, appellant also failed to heed the officer's warning to "get away from his pocket." Appellant thus continued this furtive behavior despite the officer's command to refrain.

While feeling the capsules alone may not be sufficient probable cause, the totality of the circumstances gave the officer probable cause to believe the numerous capsules contained illicit drugs. Appellant attempted to conceal the drugs, failed to heed the officer's demand that he cease the furtive behavior, and failed to respond to the officer's questions. See generally 2 Wayne R. LaFave, Search & Seizure § 3.6(f), at 364 (4th ed. 2004) (explaining that "refusal to answer is one factor which an officer may consider, together with evidence that gave rise to his prior suspicion, in determining whether there are grounds for arrest"). Based on the totality of the circumstances, consisting of furtive movements and suspicious conduct, culminating in the officer feeling numerous capsules, which based on the officer's training and experience contained heroin, the officer had probable cause to seize the capsules.

The trial court did not err in denying the motion to suppress.

### Sufficiency

Appellant next contends the evidence was not sufficient to prove he had the intent to distribute heroin. He does not contest that he possessed the drugs.

When addressing the sufficiency of the evidence, we "'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without

evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)). In practical terms, a reviewing court does not "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Stevens v. Commonwealth, 46 Va. App. 234, 249, 616 S.E.2d 754, 761 (2005) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)) (emphasis in original), aff'd, 272 Va. 481, 634 S.E.2d 305 (2006). We ask only whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. at 249, 616 S.E.2d at 761 (quoting Kelly, 41 Va. App. at 257, 584 S.E.2d at 447). "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Kelly, 41 Va. App. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319). Thus, we do not "substitute our judgment for that of the trier of fact" even if our opinion were to differ. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002).

> "Because direct proof of intent [to distribute drugs] is often impossible, it must be shown by circumstantial evidence." Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988). Such evidence may include the quantity of drugs and cash possessed and whether appellant used drugs. Possession of a large sum of money, especially in small denominations, and the absence of any paraphernalia suggestive of personal use, also are regularly recognized as factors indicating an intent to distribute.

Welshman v. Commonwealth, 28 Va. App. 20, 37, 502 S.E.2d 122, 130 (1998) (*en banc*) (other citations omitted).

In accord with settled standards of appellate review, we view the evidence and all reasonable inferences that may be drawn from that evidence in the light most favorable to the Commonwealth, the party prevailing below. Yopp v. Hodges, 43 Va. App. 427, 430, 598 S.E.2d 760, 762 (2004).

Detective Holley, qualified as an expert in packaging and distribution of narcotics, concluded the twenty capsules are inconsistent with personal use. Expert testimony, usually that of a police officer familiar with narcotics, is routinely offered to prove the significance of the weight and packaging of drugs, regarding whether possession is for personal use or for distribution. White v. Commonwealth, 24 Va. App. 446, 453, 482 S.E.2d 876, 879 (1997). Holley opined that while a heavy user might use an average of five capsules a day, such a heavy user "wouldn't necessarily carry their stash with them." The detective further considered the amount of cash and the denominations found on appellant. Since heroin capsules sell for $10 per capsule, Holley indicated the 5 ten-dollar bills were a factor in reaching his conclusion. He also pointed out that appellant had $50 cash in one pocket and $128 in the other. Holley testified that it is the practice of drug dealers to separate sale proceeds in separate pockets.

The trial court was entitled to conclude that appellant intended to distribute heroin. See McCain v. Commonwealth, 261 Va. 483, 493, 545 S.E.2d 541, 547 (2001) (finding that the quantity of the drugs seized, the manner in which they are packaged, and the presence of equipment related to drug distribution are indicia of distribution); Hunter v. Commonwealth, 213 Va. 569, 570, 193 S.E.2d 779, 780 (1973) (holding that proof that quantity possessed exceeds that normally intended for personal use, without more, is sufficient to show intent to distribute).

## CONCLUSION

For the foregoing reasons, we find that the trial court did not err in denying appellant's motion to suppress. Additionally, the trial court did not err in finding the evidence sufficient to convict appellant of possession of heroin with the intent to distribute. Accordingly, the trial court is affirmed.

Affirmed.