COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Willis and Senior Judge Hodges
Argued at Norfolk, Virginia


CLIFTON MOORE, JR.
                                        OPINION BY
v.        Record No. 1922-96-1    JUDGE JERE M. H. WILLIS, JR.
                                        JULY 22, 1997
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
                   E. Everett Bagnell, Judge

          Patricia Atkins Cannon, Senior Assistant
          Public Defender (Office of the Public
          Defender, on brief), for appellant.

          Monica S. McElyea, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.


     Clifton Moore, Jr. contends (1) that the trial court erred

in denying his motion to suppress evidence and (2) that the

evidence was insufficient to support his convictions for a second

offense of possession of heroin with the intent to distribute and

conspiracy to possess heroin with the intent to distribute.  We

affirm the convictions.

                              I.

     On August 7, 1993, on an interstate highway bridge, Trooper

Taylor stopped a vehicle for speeding sixty-nine miles per hour

in a fifty-five mile per hour zone.  Anthony Ellis was driving,

Moore was in the front passenger seat, and a man named Faison was

in the rear seat.  No pedestrian walkway led off the bridge.

     Ellis informed the trooper that he had neither the vehicle

registration nor a driver's license, and all three occupants

denied ownership of the vehicle. The trooper learned subsequently that the vehicle belonged to Ellis' wife. Because Ellis had no identification, the trooper took him to the police cruiser. Faison and Moore remained in the car. At one point, Ellis returned to the car, purportedly to get a cigarette.

Moore told the trooper that Ellis was not who he said he was. Upon learning that Ellis had provided a false name and Social Security number, the trooper determined that he would not release Ellis on a summons. He arrested Ellis for forgery of a summons and handcuffed him.

The trooper then asked Moore and Faison to step out of the vehicle. Upon questioning, Faison and Moore acknowledged that neither had a valid driver's license. The trooper observed that Faison was unable to drive because he appeared to be under the influence of something.

The trooper testified that he had "a bad feeling about" the situation and was "trying to stall for time" until backup arrived. Because Ellis was in custody and neither Moore nor Faison could legally operate the vehicle, the trooper told Faison and Moore that he would inventory the vehicle preparatory to having it towed and that he intended to remove them from the interstate pursuant to state police policy. He then frisked them for weapons to insure his safety while conducting the inventory and while transporting them off of the interstate.

During his frisk of Moore, the trooper detected and removed

- 2 -

from Moore's pocket an unsheathed syringe, which contained a clear, white liquid. When Moore denied being a diabetic, the trooper arrested him for possessing drug paraphernalia. The trooper then searched Moore incident to that arrest and discovered in his groin area a brown bag containing ninety-nine small, blue glassine bags of heroin. Each bag had a street value of $25 to $35. The trooper testified that normally a customer will buy one or two bags at a time for personal use.

At police headquarters, Moore voluntarily admitted trying to purchase heroin and accompanying Ellis, whom he knew to be a drug dealer, to Norfolk to obtain drugs. He stated that when they were stopped, Ellis told him to hide the heroin and he hid the bag and syringe on his person.

At trial, Moore testified that he knew Ellis was a drug dealer and knew that Ellis was going to sell the heroin. He testified that he was a drug user but had not sold or conspired to sell heroin. He testified that he hid the heroin and intended to keep it for his personal use.

## II.

While Moore concedes the lawfulness of the traffic stop, he contends that the trooper had no lawful basis to frisk him for weapons. He argues that this frisk was unreasonable, requiring suppression of the evidence thereby discovered.[1]  We disagree.

---

[1] We decline to address Moore's argument that Taylor lacked probable cause to search him after finding the syringe during the pat-down. This argument was not addressed to the trial court, and we will not consider it for the first time on appeal. Rule 5A:18.

"On appeal, the burden is on appellant to show, considering the evidence in the light most favorable to the Commonwealth, that the denial of the motion to suppress constituted reversible error."  Stanley v. Commonwealth, 16 Va. App. 873, 874, 433 S.E.2d 512, 513 (1993).

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . . "  See Terry v. Ohio, 392 U.S. 1, 8-9 (1968).  However:

> [I]n certain circumstances, a police officer is entitled to conduct a limited search of a citizen who has been detained but not arrested.  The search is necessary because police officers should not be subjected to danger . . . .

Harris v. Commonwealth, 241 Va. 146, 149, 400 S.E.2d 191, 193 (1991).  See Adams v. Williams, 407 U.S. 143, 146 (1972).

"The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'"  Pennsylvania v. Mimms, 434 U.S. 106, 108-09 (1977) (quoting Terry, 392 U.S. at 19).  As a general matter, society's concern for the safety of law enforcement officials when they are "conducting [their] duties is of paramount importance."  Harris, 241 Va. at 151, 400 S.E.2d at 194.  Acknowledging that police officers should be protected in the performance of their duties,

- 4 -

the United States Supreme Court has held that an officer may conduct a reasonable search for weapons:

> [W]here he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. <u>The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger</u>.

<u>Terry</u>, 392 U.S. at 27 (citations and footnote omitted) (emphasis added). <u>See</u> <u>Maryland v. Wilson</u>, 117 S. Ct. 882, 886 (1997) (permitting officer to order passengers out of their car during a traffic stop because the "danger to an officer from a traffic stop is likely to be greater where there are passengers in addition to the driver in the stopped car"); <u>Lansdown v. Commonwealth</u>, 226 Va. 204, 212, 308 S.E.2d 106, 111 (1983) ("The law does not expect that a police officer must gamble on turning away from a possible danger and chance taking a bullet in the back merely because of the status of a vehicle's occupants."); <u>Helms v. Commonwealth</u>, 10 Va. App. 368, 371, 392 S.E.2d 496, 497 (1990) (exigent circumstances justifying warrantless search include danger to the officer).

In <u>State v. Evans</u>, 618 N.E.2d 162 (Ohio 1993), police officers patted down a suspect prior to placing him in their cruiser following the suspect's inability to produce a driver's license after being stopped for a traffic violation. The Supreme Court of Ohio held:

> Here, the officer's pat-down search of the
> defendant was in accordance with standard
> police procedure which dictates that
> protective measures be taken before a person
> is to be held in the back seat of a squad
> car.  A determination as to the
> reasonableness of a particular police
> procedure depends "on a balance between the
> public interest and the individual's right to
> personal security free from arbitrary
> interference by law officers."  United States
> v. Brignoni-Ponce, [] 422 U.S. 873, 878
> [(1975)].  Certainly, it is reasonable that
> the officer, who has a legitimate reason to
> so detain that person, is interested in
> guarding against an ambush from the rear.

Id. at 167.  The Ohio Court held that the officers' personal
security when balanced against the driver's privacy interests,
warranted "a brief pat-down search for weapons where the
detaining officer has a lawful reason to detain said driver in
the patrol car."  Id.  See also State v. Vasquez, 807 P.2d 520,
522-23 (Ariz. 1991) (permitting search of defendant's jacket,
which he wanted to take with him, where officer was going to
drive him home from where he had been fighting with his wife);
Byrd v. State, 458 A.2d 23, 25 (Del. 1983) (emphasizing that
officer's intent to transport suspect in his police car to scene
of crime justified frisk for weapons); 4 Wayne R. LaFave, Search
and Seizure:  A Treatise on the Fourth Amendment § 9.5(a), at 259
(3d ed. 1996).

Moore relies on Sattler v. Commonwealth, 20 Va. App. 366,
457 S.E.2d 398 (1995).  A police officer followed Sattler onto a
service station lot for the purpose of issuing him a summons for
a traffic violation.  Before issuing the ticket, the officer

permitted Sattler to fuel his car and to move it from the fuel pump to a parking space on the service station lot. The officer then instructed Sattler to have a seat in the police cruiser but first frisked him pursuant to the officer's personal policy to frisk anyone being placed in his police cruiser. We held the frisk unlawful, because the circumstances "failed to prove that the officer had specific and articulable facts upon which to conclude that Sattler was armed and dangerous." Id. at 369, 457 S.E.2d at 400.

The circumstances in this case are quite different from those in Sattler. In Sattler, the stop took place on the parking lot of a service station that was open for business. The officer was not obliged to put Sattler in his cruiser or to get into his cruiser with Sattler. The circumstances permitted the officer, if he entered the cruiser with Sattler, to observe Sattler and to defend himself, if necessary.

In this case, the trooper was required to inventory the car preparatory to its removal from the bridge. In doing so, he was obliged to focus his attention on the interior of the vehicle, turning his back on Moore and Faison. He was further required to take Moore and Faison into his police cruiser to remove them from the bridge. In doing so, he was required to focus his attention and activity on driving the police cruiser. He could not observe Moore and Faison and was limited in his ability to defend himself, if necessary.

The trooper's minimal initial intrusion on Moore's privacy was circumscribed by exigencies that justified a limited pat-down for weapons. The trooper was required to inventory the vehicle. He could not leave Moore and Faison on a bridge with no sidewalks or on the interstate. Their presence might have endangered traffic and themselves. The trooper testified that: "We're not allowed to let a pedestrian walk down the roadway. We stop and we will either issue a summons, warn the person, arrest the person, and we're going to transport them off the roadway."

Pursuant to state police policy, the trooper conducted "a pat-down for our safety to insure that no weapons can be used against us before we transport them because we have no cages." The police cruiser had no barrier between the front and rear seats.

Terry recognized the reasonableness of a minimal intrusion on personal privacy to insure the safety of an officer investigating, in a public place, a reasonable suspicion of lawbreaking. Other authorities have recognized the reasonableness of such intrusions to insure the safety of officers performing their duties under other circumstances. Always, the standard is reasonableness. In Sattler, we held that the nature of the offense and the location and circumstances of the encounter were insufficient to render a frisk reasonable.

In this case, Ellis' offense, Faison's intoxication, the dangerousness of the location, and the trooper's duty to

inventory the vehicle and to transport its occupants created a situation that was fraught with potential danger to the trooper, justifying as reasonable the minimal intrusion of frisking Moore.

III.

Moore next contends that the evidence was insufficient to support his conviction for possession of heroin with the intent to distribute and conspiracy to do the same. He argues that he intended to keep the drugs for his own personal use and that the evidence failed to prove that he conspired with Ellis to distribute heroin.

Upon a challenge to the sufficiency of the evidence to support a conviction, we "must consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth." Derr v. Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991) (citation omitted).

POSSESSION WITH INTENT TO DISTRIBUTE

Thus viewed, the evidence proved that Moore possessed the drugs with the intent to distribute. He testified that when he bought heroin for his use, he bought up to five bags at a time, usually paying $10 per bag. The trooper testified that most users bought one to two bags at a time. Moore possessed ninety-nine bags having a street value of $25 to $35 each. "Indeed, quantity, when greater than the supply ordinarily possessed by a [heroin] user for his personal use, is a circumstance which, standing alone, may be sufficient to support a finding of intent to distribute." Hunter v. Commonwealth, 213 Va. 569, 570, 193 S.E.2d 779, 780 (1973).

The credibility of witnesses and the weight to be given

their testimony are matters exclusively for the fact finder.
Barker v. Commonwealth, 230 Va. 370, 373, 337 S.E.2d 729, 732
(1985).  While Moore stated that he intended to keep the heroin
for his personal use, the trial court was entitled to reject this
assertion.  See Henry v. Commonwealth, 195 Va. 281, 290, 77
S.E.2d 863, 869 (1953).  Furthermore, "[e]vidence of
contradictory statements or false alibis by the accused is given
much weight in cases relying upon circumstantial evidence
. . . ."  Sutphin v. Commonwealth, 1 Va. App. 241, 248, 337
S.E.2d 897, 901 (1985).  Moore told Taylor that he placed the
heroin in his pants.  At trial, he testified, first, that he did
not know what was in the bag that he placed in his pants, and,
later, that "I knew what was in there."

Finally, Moore admitted that he knew Ellis intended to
distribute the heroin.  He stated that Ellis told him to hide the
heroin.  Thus, Moore was present and assisted Ellis by attempting
to prevent the discovery of the heroin.  His actions in hiding
the heroin rendered him a principal in the second degree to
Ellis' possession of heroin with the intent to distribute.  See
Foster v. Commonwealth, 179 Va. 96, 99-100, 18 S.E.2d 314, 315-16
(1942).

## CONSPIRACY

The evidence also supports Moore's conviction for conspiracy
to possess heroin with intent to distribute.  "A conspiracy is
'an agreement between two or more persons by some concerted

action to commit an offense.'" Brown v. Commonwealth, 3 Va. App. 101, 107, 348 S.E.2d 408, 411 (1986). "Proof of an explicit agreement to distribute a controlled substance is not required; the agreement may be proved by circumstantial evidence . . . . In fact, the nature of conspiracy is such that 'it often may be established only by indirect and circumstantial evidence.'" Brown v. Commonwealth, 10 Va. App. 73, 77, 390 S.E.2d 386, 388 (1990) (citations omitted).

While "[e]vidence which merely establishes aiding or abetting in the commission of the distribution offense will not suffice to prove a conspiracy . . . [t]he evidence need not show that . . . [the defendant] knew the entire scope or details of the plan of distribution." Zuniga v. Commonwealth, 7 Va. App. 523, 529, 531, 375 S.E.2d 381, 385-86 (1988) (citation omitted).

An agreement between Moore and Ellis may be inferred from the facts and circumstances. As we have noted, determinations of credibility lie within the purview of the fact finder, who may reject a witness' testimony and base a finding of guilt upon contradictory statements. The fact finder may conclude that the defendant lied to conceal his guilt. See Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981).

Moore knew that Ellis was a drug dealer and intended to distribute the heroin. In furtherance of that unlawful scheme, Moore accompanied Ellis to Norfolk to obtain heroin and agreed to hide the heroin at Ellis' direction. This evidence supports the

- 12 -

finding that Moore intended "'to further, promote and cooperate in'" Ellis' venture.  See Zuniga, 7 Va. App. at 529, 375 S.E.2d at 385.

The judgment of the trial court is affirmed.

Affirmed.