COLEMAN, Judge, with whom FITZPATRICK, C.J., BENTON and ANNUNZIATA, JJ.,
join, dissenting.
The Fourth Amendment of the Constitution of the United States provides in part that “the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.... ” This inestimable right of personal security belongs to all citizens, whether they are in the comfort of their homes or in the streets of our cities.
Harris v. Commonwealth, 241 Va. 146, 149, 400 S.E.2d 191, 193 (1991) (quoting Terry v. Ohio, 392 U.S. 1, 8-9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).
The majority holds that a police officer who is engaged in a consensual encounter with a citizen, following a lawful but concluded traffic stop, may, without violating the Fourth Amendment, frisk a citizen for weapons when the officer has reason to believe the citizen is armed but no reason to suspect that the citizen is or may be engaged in criminal activity. The majority bases its holding upon the required Fourth Amendment analysis of “balancing an individual’s right to be free from arbitrary government intrusions against society’s countervailing interest in preventing or detecting crime and in protecting its law enforcement officers.” In so doing, the majority concludes that a police officer’s safety, standing alone, outweighs the intrusion upon a citizen’s privacy right and justifies a pat-down of the citizen for weapons. The majority’s balancing analysis ignores a major component of the second prong of the equation which is balancing the *737 individual’s privacy right against both the police officers’ safety and “society’s countervailing interest in preventing or detecting- crime.” In order to justify an intrusion upon an individual’s privacy right, there must be a reason to suspect that the person to be frisked is armed and dangerous and a reason requiring the officer to remain on the scene — such as the officer’s duty to pursue suspected criminal activity or some other official duty of his or her office.
The mere fact that a police officer observes a bulge in a citizen’s pocket during a consensual encounter and reasonably suspects that it is a weapon of some type does not justify a frisk of the citizen.[2] I find no authority for the proposition that a police officer engaged in a consensual encounter with a citizen may frisk the citizen for weapons without either some suspicion that the citizen may be involved in criminal activity or some duty to remain on the scene to fulfill other law enforcement responsibilities. Thus, Deputy Bolen’s frisk of Reittinger, based solely upon the fact that the deputy suspected he might have a weapon, was not a reasonable search as required by the Fourth Amendment. I would hold that because the frisk violated the Fourth Amendment, the trial court erred in not suppressing the seized smoking device that contained marijuana residue. I would reverse the conviction.
The majority holds that the frisk for weapons occurred during a consensual encounter in which the deputy was attempting to persuade Reittinger to consent to a search of his vehicle for weapons or contraband. The deputy conceded that when he requested to search the van, he had no reason to suspect that the van contained or that Reittinger possessed weapons or contraband. In order to justify the frisk of Reittinger during the consensual encounter, the majority at *738 tempts to link the frisk to the original traffic stop by characterizing the consensual encounter as a seamless event that “flows immediately” from the lawful traffic stop. I respectfully disagree with the majority’s characterization of circumstances and the consequences of that characterization. If the encounter, during which the deputy made three separate requests to search Reittinger’s van, was part of the traffic stop because the events “flow[ed] immediately into a consensual encounter,” then, as Judge Benton asserts in his dissent, Reittinger could not have felt free to leave during this continuation of the traffic stop; thus, the continued detention and frisk of Reittinger were both illegal. For the majority to reach this result by simply suggesting the frisk was part of the traffic stop which “flows immediately into a consensual encounter” obliterates the distinction between a consensual encounter and a lawful detention based on reasonable suspicion or probable cause of criminal activity. A motorist has the right to be free of law enforcement intrusion when he or she is no longer reasonably suspected of being involved in criminal activity. However, although I reject the majority’s utilization of the “flows immediately into a consensual encounter” rationale, I accept the majority’s ultimate conclusion that the frisk occurred during a consensual encounter.[3]
*739 The Terry decision emphasized that courts must give judicial “approval of legitimate and restrained investigative conduct undertaken on the basis of ample factual justification,” but cautions that courts must be mindful of the “traditional responsibility to guard against police conduct ... which trenches upon personal security without the objective evidentiary justification which the Constitution requires.” Terry, 392 U.S. at 15, 88 S.Ct. 1868. I am not unmindful of the fact that police officers confront armed and dangerous people almost daily. They are constantly subject to personal harm and loss of life. Not surprisingly, a traffic stop is one of the most dangerous duties performed by a police officer. See Pennsylvania v. Mimms, 434 U.S. 106, 118-19, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Although the right of a police officer to protect himself or herself from an armed citizen must be accorded high priority, a police officer is not entitled to frisk a citizen during a consensual encounter merely because the person is suspected of being armed and dangerous. See 4 Wayne R. LaFave, Search and Seizure § 9.5(a), at 245-70 (3d ed. 1996).
The cases relied upon by the majority do not provide such authority. In Bethea v. Commonwealth, 245 Va. 416, 420, 429 S.E.2d 211, 213 (1993), the defendant, who was a passenger in a car stopped for a traffic infraction, was lawfully frisked because he was being lawfully detained and his “bizarre” behavior reasonably caused the officer to be “startled” and “scared” that the defendant “might have had access to weapons.” In Moore v. Commonwealth, 25 Va.App. 277, 286, 487 S.E.2d 864, 868-69 (1997), a police officer was required to remain in a citizen’s presence while transporting the stranded pedestrian in his cruiser off the interstate highway. Performance of the officer’s duties required that he remain in the citizen’s presence in a vulnerable situation. Similarly, in Welshman v. Commonwealth, 28 Va.App. 20, 32, 502 S.E.2d 122, 128 (1998) (en banc), the defendant, who was among a group of bystanders, was lawfully detained during an arrest of two persons observed making a drug sale; the lawful detention of those who might aid and assist the persons being *740 arrested justified a protective frisk of the bystander for weapons. And, in James v. Commonwealth, 22 Va.App. 740, 744-46, 473 S.E.2d 90, 92 (1996), a passenger who was frisked for weapons was lawfully detained while the officers arrested the driver on a felony warrant.
In each case, officers either lawfully detained the defendant as part of a criminal investigation or traffic stop or, in carrying out a police function, the officer was required to remain in the citizen’s presence in a vulnerable situation. In none of these cases was the defendant frisked during a wholly consensual encounter without the added element of the officer needing to remain in the defendant’s presence in order to fulfill his or her duty. The fact that Deputy Bolen may ask for consent to search and may lawfully remain on the scene until the citizen responds to his request is of no moment. The question is not whether the officer had the right to be there; it is whether the officer had the duty or responsibility to be there and the commensurate right to protect his or her safety. An officer may have the right to engage any citizen in public in a consensual encounter, but the officer may not, in these circumstances, frisk the citizen merely because the officer reasonably fears for his or her safety.
An officer’s protective frisk for weapons is an intrusion upon an individual’s personal privacy and is itself a “seizure” that implicates the Fourth Amendment. See Terry, 392 U.S. at 16-19, 88 S.Ct. 1868; Toliver v. Commonwealth, 23 Va.App. 34, 36, 473 S.E.2d 722, 724 (1996). The determination as to the reasonableness of a stop or seizure depends “on a balance between the public interest and the individual’s right to personal security free from arbitrary interference by law [enforcement] officers.” United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).
In Terry, the Supreme Court held that, a police officer may conduct a protective frisk if he or she can point to “ ‘specific and articulable facts which, taken together with rational inferences from those facts,’ ” reasonably lead the officer to conclude: (1) that “ ‘criminal activity may be afoot,’ ” and (2) that *741 the suspect “ ‘may be armed and presently dangerous.’ ” Lansdown v. Commonwealth, 226 Va. 204, 209, 212, 308 S.E.2d 106, 110, 112 (1983) (quoting Terry, 392 U.S. at 21, 30, 88 S.Ct. 1868). Justice Harlan emphasized in his concurring opinion in Terry that the Fourth Amendment generally does not permit a police officer to frisk an individual based solely upon the officer’s reasonable suspicion that the individual is armed and dangerous but without a legitimate reason to suspect criminal activity. He stated:
[I]f the frisk is justified in order to protect the officer during an encounter with a citizen, the officer must first have constitutional grounds to insist on an encounter, to make a forcible stop. Any person, including a [police officer], is at liberty to avoid a person he considers dangerous. If and when a [police officer] has a right instead to disarm such a person for his own protection, he must first have a right not to avoid him but to be in his presence. That right must be more than the liberty (again, possessed by every citizen) to address questions to other persons, for ordinarily the person addressed has an equal right to ignore his interrogator and walk away; he certainly need not submit to a frisk for the questioner’s protection. I would make it perfectly clear that the right to frisk ... depends upon the reasonableness of a forcible stop to investigate suspected crime.
Terry, 392 U.S. at 32-33, 88 S.Ct. 1868 (Harlan, J., concurring) (second emphasis added). Accord Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (“So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose.” (emphasis added) (footnote omitted)).
As Justice Harlan’s concurring opinion asserts, the general purpose of a protective frisk is to facilitate the police officer’s limited investigation of suspected criminal activity without fear or threat of violent reprisal by the suspect. See Adams, 407 U.S. at 146, 92 S.Ct. 1921. An officer acts unreasonably by conducting a protective frisk when the officer has unnecessari *742 ly placed himself or herself in a precarious situation by initiating or continuing a baseless encounter with an individual whom he or she considers armed and dangerous. See 4 LaFave, supra § 9.5(a), at 246^47. Thus, consistent .with the commands of the Fourth Amendment, a police officer may not approach and frisk an individual whom he or she reasonably believes may be armed and dangerous if the officer has no reason to suspect that the individual is or may be also engaged in criminal activity.[4] See Toliver, 23 Va.App. at 36-37, 473 S.E.2d at 724; Commonwealth v. Couture, 407 Mass. 178, 552 N.E.2d 538, 540-41 (1990); State v. Giltner, 56 Haw. 374, 537 P.2d 14, 17 (1975); People v. Batino, 48 A.D.2d 619, 367 N.Y.S.2d 784, 785 (1975).
Similarly, where an officer lawfully “stops” an individual, and through investigation dispels any reasonable suspicion that the individual may be engaged in criminal activity, the officer may not thereafter conduct a protective frisk for weapons, even if the officer reasonably suspects that the individual is presently armed and dangerous, unless subsequent circumstances renew the officer’s reasonable belief that criminal activity may be afoot. See United States v. Thomas, 863 F.2d 622, 628 (9th Cir.1988); State v. White, 856 P.2d 656, 662 (Utah Ct.App.1993); Coleman v. United States, 337 A.2d 767, 771-72 (D.C.App.1975); see also 4 LaFave, supra, § 9.5(a), at 247. An officer may not justify a protective search by using legitimate safety concerns to bootstrap the lack of suspicion of criminal activity. See id. Under the general rule of Terry, if the officer’s justification to stop or detain a person dissipates, then a weapons frisk is constitutionally impermissible.[5] In *743 order to conduct a protective frisk under current case law, a police officer must legitimately be in the presence of the subject of the frisk in the course of performing the officer’s duties to investigate suspected criminal activity or to protect the public safety. See 4 LaFave, swpra, § 9.5(a), at 247.
Once Deputy Bolen had completed the investigation of Reittinger’s defective equipment violation, he was no longer required, by virtue of his duties, to continue an investigation or to secure the safety of citizens. Bolen testified that after he completed the headlight investigation, he did not suspect that Reittinger was otherwise engaged in criminal activity. Bolen lawfully requested permission to search Reittinger’s vehicle, a question he “commonly ask[s] people [after] a traffic stop.” Assuming Bolen had a reason to suspect that Reittinger may have been armed, Bolen’s frisk violated the Fourth Amendment because, at the time of the frisk, his duties did not require him to remain in Reittinger’s presence to investigate crime or to protect public safety. Because the frisk violated the Fourth Amendment, the evidence should have been suppressed. Accordingly, I respectfully dissent.

. See Stanley v. Commonwealth, 16 Va.App. 873, 876-77, 433 S.E.2d 512, 514-15 (1993) (holding that it was unreasonable for the officers to suspect that the bulge in the pocket of a motor scooter operator was a weapon). In the present case, the officer stated he frisked Reittinger for "his safety” and because he thought the bulge might be a weapon; however, the officer testified at trial that he did not believe Reittinger was armed and dangerous.

. Until the frisk, the encounter was not a "seizure” that implicated the Fourth Amendment. Even though a citizen may feel some trepidation during a consensual encounter with a police officer and may be reluctant to walk away, a police officer’s conduct does not implicate the Fourth Amendment if the officer merely poses questions to an individual in a public place and the individual chooses to answer them. See Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Buck v. Commonwealth, 20 Va.App. 298, 301-02, 456 S.E.2d 534, 535 (1995). Without some indicated restraint, mere questioning by officers after a routine traffic stop is over and its purpose served, does not amount to a seizure under the Fourth Amendment. See United States v. Sullivan, 138 F.3d 126, 131 (4th Cir.1998). "As long as the [individual] to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person’s liberty or privacy as would under the [Fourth Amendment] require some particularized and objective justification.” United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

. As one court has colorfully stated the rule: "No matter how appealing the cart may be, the horse must precede it.” Gomez v. United States, 597 A.2d 884, 891 (D.C.App.1991).

. The decision in Thomas is demonstrative. There, a police officer, after receiving a report describing two men suspected of passing counterfeit money, stopped a vehicle in which two possible suspects were riding. Thomas, 863 F.2d at 624. After stopping the vehicle, the officer determined that the defendant "did not match the description of either of the suspects.” Id. at 628. After questioning the defendant as *743 to why he was in the area and checking his identification, the officer asked Thomas whether he was carrying a weapon. When Thomas did not respond, the officer frisked Thomas, recovered a handgun, and arrested him for carrying a concealed weapon. Id. at 624. The federal appeals court determined in Thomas that the officer’s initial stop was lawful, finding that the defendant’s initial appearance and proximity to the crime scene reasonably supported the officer’s suspicion that he might be the counterfeiter. Id. at 626. However, the court found that the justification for the stop evaporated when the officer determined that Thomas did not fit the reported description of either suspect. Id. at 628-29. Because the officer lacked reasonable suspicion that Thomas was engaged in criminal activity, the court held that there was "no basis for the [officer’s] subsequent detention and frisk.” Id. at 628.