UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Petty, Alston and Senior Judge Felton
Argued by teleconference


HAMZA OSMAN

MEMORANDUM OPINION[*] BY
v.      Record No. 1656-14-4        JUDGE ROSSIE D. ALSTON, JR.
DECEMBER 15, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise M. DiMatteo, Judge[1]

James G. Robinson, Assistant Public Defender, for appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Hamza Osman (appellant) appeals his conviction of driving while intoxicated in violation

of Code § 18.2-266.  Specifically, appellant argues that the trial court erred by denying his

motion to suppress because "there was not reasonable, articulable suspicion of criminal activity

to support the initial seizure of appellant" and "the officers arrested appellant without probable

cause."  Finding no error in the trial court's determination that no Fourth Amendment violation

occurred, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge DiMatteo presided over the jury deliberations and entered the final sentencing
order; however Judge Designate Benjamin N.A. Kendrick ruled on appellant's motion to
suppress.

I. Background[2]

The evidence indicated that at 2:12 a.m. on November 28, 2013, appellant was arrested

for driving while intoxicated ("DUI") at 3141 Wilson Boulevard in Arlington by drawing the

attention of Officer Mulrane of the Arlington County Police Department when appellant drove

one of his vehicle's tires up on to a curb. On May 30, 2014, appellant filed a motion to suppress

evidence of any statements he made and any other evidence recovered during the stop. The trial

court conducted a hearing on appellant's motion to suppress on June 5, 2014.

At the hearing on appellant's motion to suppress, Officer Mulrane testified that he had

been a police officer with Arlington County for three and a half years at the time of the stop and

had training in DUI investigation. This experience included a 40-hour training course when he

was in the police academy as well as his participation in over 45 DUI arrests.

Officer Mulrane testified that he was on duty and in uniform the night of November 28,

2013, outside of a CVS location in the Clarendon section of Arlington, Virginia. Officer

Mulrane testified that Wilson Boulevard is an area with several bars lining the street. On the

night of appellant's arrest, the bars along Wilson Boulevard had just closed and Officer Mulrane

was clearing out a large group of people who were loitering. While he was clearing out the area,

Officer Mulrane heard a loud bang. After hearing this bang, he looked down the east side of the

block to see appellant's car with its front right passenger side tire on the curb in a parallel

parking area. Officer Mulrane had a "clear line of sight all the way down Wilson Boulevard"

when he observed appellant's car. Officer Mulrane testified that the car began to straighten out

its front right tire and pull out slightly onto Wilson Boulevard, at which point Officer Mulrane

<hr>

[2] As the parties are fully conversant with the record in this case and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of the disposition of this
appeal.

ran over to the car and began to tap his fist against the window while yelling for appellant to stop. Officer Mulrane testified that he asked appellant to stop the car, put it into park, and take the keys out of the ignition because "[b]ased on [his] training and experience, [he] was investigating a potential accident, also a potential DUI situation." Further, that

> [i]n those situations, especially because [Officer Mulrane] was on foot, [he] wasn't anywhere near a police cruiser, [he] wanted [appellant] to put the car in park and take the keys out so that he wouldn't continue driving and hit [Officer Mulrane], hit other officers or hit any of the pedestrians who were walking in the environment.

According to Officer Mulrane, at the time he approached the car, appellant's car was about three quarters in the parallel parking spot and one quarter in the street. At that time, there was moderate traffic on Wilson Boulevard. When appellant failed to comply with Officer Mulrane's first request, Officer Mulrane again asked appellant to stop the car, put it in park, and take the keys out of the ignition. Finally, appellant stopped the car and put it into park, but refused to take the keys out of the ignition or roll down the car window. Officer Mulrane testified that at that point, appellant was "just kind of screaming that, you can't ask me to do things. You can't ask me to do that" and continued to refuse to take the keys out of the ignition. Officer Mulrane, realizing that the car door was unlocked, opened the door and asked appellant "at least three or four times" to step out of the car, and appellant refused. Appellant then leaned toward the center of the vehicle, and Officer Mulrane and another officer reached in and forcibly removed appellant from the vehicle.

A few seconds after removing appellant from the vehicle, the officers handcuffed appellant, read him his Miranda rights and "got started beginning the DUI investigation." Officer Mulrane asked appellant if he had anything to drink that night. Appellant responded that he had one drink and then refused to answer any more questions without a lawyer. Officer

- 3 -

Mulrane ceased questioning but noticed that appellant had bloodshot eyes, a strong odor of alcohol emanating from his person, and slightly slurred speech. Officer Mulrane asked appellant if he would participate in a field sobriety test, specifically a breathalyzer. According to Officer Mulrane, appellant initially consented to the breathalyzer but then retracted that consent and refused to take the breath test. Appellant was officially placed under arrest at 2:16 a.m.; about four minutes after Officer Mulrane initially approached the vehicle.

On cross-examination, Officer Mulrane admitted that he did not ask for appellant's identification, registration, or proof of insurance before putting him in handcuffs. He further admitted that he made no "attempt to ascertain [appellant's] identity before [he] pulled [appellant] out of the car." Officer Mulrane stated that he formed an intent to arrest appellant between the time he first approached the car and when he read appellant his Miranda rights and that appellant was under arrest a few seconds before he was Mirandized.

Appellant also testified at the hearing on his motion to suppress and introduced a video of his vehicle at the site of the arrest and stop, arguing it showed that the car was not resting in the exact spot that Officer Mulrane testified. On cross-examination, appellant admitted that he had been drinking earlier in the evening. Appellant stated that when the officers approached his vehicle, they were yelling at him and slamming on the car door and they surprised him. Appellant testified that he immediately rolled down his window to "figure out what [the problem] was" and that Officer Mulrane continued to yell at him to put the car in park and take the keys out of the ignition. According to appellant, he "simply asked [Officer Mulrane] what the problem was, sir[?]" After being pulled out of the car, appellant asked Officer Mulrane why he was doing this and stated that he did not have a reason to stop appellant and that he couldn't do so without "any prior procedures." Appellant testified that every time he asked Officer

Mulrane a question, Mulrane would repeat his orders to put the car into park. Appellant admitted that when trying to parallel park, his right passenger tire "was a little bit up there [on the curb]."

At the conclusion of the evidence on the motion to suppress, appellant argued that a "slight error in parallel parking" was insufficient for reasonable suspicion of criminal activity when no driving behavior was observed and no other vehicles were parked nearby. He further argued that the encounter went well beyond the scope of a Terry stop and that there was no probable cause to arrest appellant. The trial court denied appellant's motion to suppress, ruling that based on Officer Mulrane's observation of the vehicle's tire on the sidewalk, appellant's refusal of Officer Mulrane's commands, Officer Mulrane's observation of physical signs of appellant's intoxication, and appellant's admission at trial that he had been drinking, Officer Mulrane's actions were reasonable.

A jury found appellant guilty of DUI on August 28, 2014, and the trial court imposed the jury's recommended sentence on September 8, 2014. This appeal followed.

II. Analysis

A. Standard of Review

> In reviewing the denial of a motion to suppress evidence claiming a violation of a person's Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial. The burden is on the defendant to show that the trial court committed reversible error. We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence. We will review the trial court's application of the law de novo.

Jones v. Commonwealth, 279 Va. 665, 670, 691 S.E.2d 801, 803 (2010) (quoting Whitehead v. Commonwealth, 278 Va. 300, 306-07, 683 S.E.2d 299, 301 (2009)).

B.  Officer Mulrane Had Reasonable Suspicion to Justify the Vehicle Stop

"The Fourth Amendment permits brief investigative stops — such as the traffic stop in this case — when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'"  Navarette v. California, 134 S. Ct. 1683, 1687 (2014) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)); see also Terry v. Ohio, 392 U.S. 1, 21-22 (1968).  The reasonable suspicion necessary to justify a stop "is dependent upon both the content of information possessed by police and its degree of reliability.  Both factors – quantity and quality – are considered in the 'totality of the circumstances – the whole picture,' Cortez, 449 U.S. at 417, that must be taken into account when evaluating whether there is reasonable suspicion."  Alabama v. White, 496 U.S. 325, 330 (1990).  "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than necessary for probable cause."  Navarette, 134 S. Ct. at 1687 (citations omitted).

Appellant was seized for purposes of the Fourth Amendment when Officer Mulrane tapped his fist on appellant's window and ordered appellant to place his car in park and remove the keys from the ignition.  Concomitantly, Officer Mulrane possessed the requisite reasonable articulable suspicion to engage the appellant in a brief investigatory stop.

The totality of circumstances assessment allows law enforcement to take the time, place, and all surrounding circumstances into account when forming an objective basis for reasonable suspicion of criminal activity.  See Beasley v. Commonwealth, 60 Va. App. 381, 395-99, 728 S.E.2d 499, 506-07 (2012).  Here, the facts established that:  (1) it was 2:00 a.m., (2) appellant was in an area populated with bars, (3) the bars had just closed for the night, (4) patrons were exiting the bars and entering the pedestrian sidewalks, (5) appellant drove his vehicle into the curb with such force that his right front passenger tire left the roadway and drove up on to the

- 6 -

sidewalk, (6) Officer Mulrane heard the "loud bang" of the tire as it struck the curb from some distance away, and (7) when Officer Mulrane approached the vehicle, appellant was non-compliant with his orders. Further, Officer Mulrane had three and a half years of police experience and had participated in 45 DUI arrests at the time of the stop.

Additionally, "Terry recognized the reasonableness of a minimal intrusion on personal privacy to insure the safety of an officer investigating, in a public place, a reasonable suspicion of lawbreaking." Moore v. Commonwealth, 25 Va. App. 277, 286, 487 S.E.2d 864, 869 (1997). Officer Mulrane testified that he "wanted [appellant] to put the car in park and take the keys out so that he wouldn't continue driving and hit [Officer Mulrane], hit other officers or hit any of the pedestrians who were walking in the environment."

Based on these facts, it was objectively reasonable for Officer Mulrane to conclude that criminal activity was afoot; specifically, to suspect that appellant might have been driving under the influence. Thus, reasonable articulable suspicion existed for the stop. This conclusion is further supported by Officer Mulrane's testimony that based on his experience, he "was investigating a possible accident, also a potential DUI situation."

For these reasons, we find that Officer Mulrane had reasonable articulable suspicion, based on the totality of the circumstances, to engage appellant in a brief investigatory stop.

### C. Probable Cause Existed for appellant's Arrest

Next, appellant argues that the trial court erred by denying his motion to suppress because the officers arrested him without probable cause.[3] We find no error as we conclude that

---

[3] The Commonwealth argues that appellant failed to preserve his argument that Officer Mulrane arrested appellant without probable cause at the time he removed appellant from the vehicle and before Officer Mulrane observed additional indicia that appellant had been drinking. We disagree as it is clear from the transcript and the trial court's ruling that both parties and the trial court were aware that appellant challenged the entirety of the stop and subsequent arrest and

the time at which Officer Mulrane removed appellant from his vehicle and handcuffed him was not the moment at which he was under arrest (as opposed to between the time when appellant's car was first approached and when appellant was Mirandized), but rather was a permissible extension of an investigatory stop.  Further, by the time appellant was placed under arrest, Officer Mulrane had probable cause to believe a DUI occurred.

"Brief, complete deprivations of a suspect's liberty, including handcuffing, 'do not convert a stop and frisk into an arrest so long as the methods of restraint are reasonable to the circumstances.'" Thomas v. Commonwealth, 16 Va. App. 851, 857, 434 S.E.2d 319, 323 (1993) (quoting United States v. Crittendon, 883 F.2d 326, 329 (4th Cir. 1989)) (holding that handcuffing defendant and transporting him less than one block for an instant "show up" did not transform the initial detention into an arrest because the officer acted reasonably as it was dark, he was alone, and defendant was suspected of committing a recent, violent crime).

Officer Mulrane testified that he was investigating "a potential accident, also a potential DUI situation" and that because he was on foot nowhere near his police cruiser, "he wanted [appellant] to put the car in park and take the keys out so that he wouldn't continue driving and hit [Officer Mulrane], hit other officers or hit any of the pedestrians who were walking in the environment."  Officer Mulrane repeatedly asked appellant to remove the keys from the ignition, and appellant repeatedly refused to do so and continued yelling.  Officer Mulrane testified that he asked appellant "at least three or four times" to step out of the car and appellant refused.  When appellant leaned over to the center console, Officer Mulrane made the decision to forcibly remove appellant from the vehicle and handcuff him so that he could continue his DUI investigation.  This was a reasonable extension of the investigatory stop.

---

the alleged lack of probable cause for that arrest.  Therefore, we will address the merits of assignment of error II.

After Officer Mulrane's investigation was completed, Officer Mulrane had probable cause to arrest appellant for DUI. "[P]robable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981) (citing Draper v. United States, 358 U.S. 307, 313 (1959); Schaum v. Commonwealth, 215 Va. 498, 500, 211 S.E.2d 73, 75 (1975)). "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." Ornelas v. United States, 517 U.S. 690, 696 (1996). Therefore, some or all of the facts considered as a basis for an officer's finding of reasonable suspicion may also support a subsequent determination of probable cause to arrest. Stated another way, in many instances reasonable articulable suspicion is part of the continuum toward establishing probable cause.

Officer Mulrane pulled appellant out of the car and handcuffed him after his repeated attempts to get appellant to take the keys out of the ignition. Officer Mulrane's actions in removing appellant from the vehicle and handcuffing him were brief and reasonable, as an extension of the investigative stop he initially conducted. During this brief detention, Officer Mulrane noticed that appellant had bloodshot eyes, the scent of alcohol on his breath, exhibited slurred speech, and appellant admitted to Officer Mulrane that he had consumed alcohol that evening.

In Jones v. Commonwealth, 279 Va. 52, 59-60, 688 S.E.2d 269, 273 (2010), the defendant also had bloodshot eyes, slurred speech, alcohol on his breath, and made some

confusing statements to the officer. The Supreme Court found that these facts as well as the defendant's refusal to take a sobriety test established probable cause for arrest. Id.

Appellant relies on United States v. Brown, 401 F.3d 588 (4th Cir. 2005), in which the Fourth Circuit held that officers did not have probable cause to arrest the defendant for public intoxication where they observed that the defendant's eyes were glassy and bloodshot, he smelled strongly of alcohol, and admitted that he had been drinking. The Fourth Circuit found that most Virginia cases dealing with public intoxication held that such observations were insufficient to find probable cause absent some additional evidence that a person consumed enough alcohol to impair his physical movement or speech. Id. at 597-98.

Appellant's reliance on Brown is misplaced. First, Brown was a public intoxication and not a DUI case. Second, in this case, Officer Mulrane had more than his observations of appellant's bloodshot eyes and scent of alcohol to support probable cause to arrest him. Virginia case law provides that a suspect's refusal to take a breathalyzer

> may have some relevance in a police officer's assessment of probable cause to arrest that defendant for driving under the influence of alcohol. When other facts show a driver's consumption of alcohol and the discernable effect of such consumption on the driver's mental or physical state, the driver's refusal to perform field sobriety tests is circumstantial evidence tending to show the driver's awareness that his consumption of alcohol would affect his ability to perform such tests.

Jones, 279 Va. at 58-59, 688 S.E.2d at 272.

In addition to Officer Mulrane's observations of appellant's physical appearance and his refusal to take a breathalyzer, he observed appellant drive his vehicle partially up on to the curb of a heavily populated sidewalk in an area where bars had just closed; refuse to put the vehicle in park and remove the keys from the ignition multiple times upon request; yell at him (Officer Mulrane) and refuse to cooperate; lean towards the center console; and admit to consuming

- 10 -

alcohol that evening. Based on the totality of these circumstances, Officer Mulrane had sufficient, objective facts and circumstances from which he could reasonably conclude that appellant was driving under the influence. Therefore, Officer Mulrane had probable cause to arrest appellant after removing him from the vehicle, continuing his investigation, and observing additional facts to support his original suspicion of DUI.

Therefore, we hold that the trial court did not err in denying appellant's motion to suppress.

<u>Affirmed.</u>