UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:    Judges O'Brien, Malveaux and Frucci
Argued by videoconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.        Record No. 2001-24-2          JUDGE STEVEN C. FRUCCI
JULY 15, 2025

CHARLES SHERARD JONES


FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
Donald C. Blessing, Judge[1]

William K. Hamilton, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on briefs), for appellant.

Kevin E. Calhoun (Law Office of Charles C. Cosby, Jr., on brief),
for appellee.


Following a motion to reconsider the circuit court's ruling on a motion to suppress the

evidence, the Circuit Court of Mecklenburg County suppressed any evidence obtained by the

police after stopping Charles Sherard Jones's vehicle. Arguing that the circuit court erred when

it found the officer's actions to be "impermissibly intense to the point of being a Constitutional

violation," the Commonwealth appeals. For the following reasons, this Court reverses the

judgment of the circuit court and remands for further proceedings.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Charles Sherard Jones filed a motion to suppress on March 24, 2023. Prior to a hearing
on that motion, Jones filed an additional motion to suppress on August 10, 2023. Judge Stephen
Anderson Nelson presided over and ruled on those motions to suppress. In February 2024, Jones
filed another motion to suppress. Judge Donald C. Blessing presided over and ruled on that
motion. Following, Jones filed a motion to reconsider the denial of the first two motions to
suppress. Judge Blessing presided over and ruled on the motion to reconsider.

BACKGROUND[2]

On August 5, 2022, Chief Jordan of the Chase City police department received a call from a known informant.[3]  The informant said he saw Jones with some "drugs" on his person and in a vehicle Jones was driving.[4]  The informant also gave a description of the vehicle, including its license plate number, make, and color.  He stated that Jones possibly had a firearm and told Chief Jordan what direction the vehicle went.

"Within four or five minutes" of speaking with the informant, Chief Jordan saw the described vehicle at an intersection.  Since the informant had told him that Jones was possibly armed with a firearm, Chief Jordan "immediately radioed for assistance."  He later requested state police assistance and requested a "drug K-9."  He followed the vehicle for "approximately three miles" and then initiated his emergency equipment to conduct a stop "on a country road."  After the vehicle stopped, Chief Jordan drew his firearm, told the driver and sole occupant, Jones, to keep his hands out his window, and detained Jones until an assisting deputy arrived.  During cross-examination at a September 1, 2023 motion to suppress hearing, Chief Jordan indicated that he opened his door and from behind his door he drew the firearm.  Jones testified that Chief Jordan "stuck his gun out of his window" and "never got out of the car."

---

[2] "In an appeal by the Commonwealth of an order of the trial court suppressing evidence," we view the evidence "in the light most favorable to the defendant and findings of fact are entitled to a presumption of correctness unless they are plainly wrong or without evidence to support them."  *Commonwealth v. Peterson*, 15 Va. App. 486, 487 (1992).

[3] The informant did not testify at the motions' hearings, and his name is not contained in the record.  However, Chief Jordan testified that the informant has given him information on "four and five, maybe more" occasions since the early 2000s.  "All of the information" previously provided had "proven to be correct."

[4] The informant had identified Jones "by name."  Chief Jordan also had a past dealing with Jones, in which Chief Jordan arrested Jones with a firearm in Jones's possession.

Approximately 15 or 18 minutes later, Deputy Walker was the first backup officer to arrive. He removed Jones from the vehicle, brought him to the trunk area, and then placed him in handcuffs. After Jones was removed from the vehicle, Chief Jordan put away his firearm. Approximately 26 minutes after initiating the stop of the vehicle, a K-9 unit from Mecklenburg County arrived.[5] Before Sergeant Clayton, a Mecklenburg County Sergeant and K-9 handler, removed the dog from the car, Jones stated "it was in the car." After the dog alerted at two areas of the vehicle, a search of the vehicle was conducted. A black canvas bag that contained 9.15 grams of cocaine in a plastic bag, digital scales, and money was found. Another 4.07 grams of cocaine were found in the trunk of the vehicle.

On March 24, 2023, Jones filed a motion to suppress, "question[ing] whether the police impermissibly extended the traffic stop" and arguing that the informant's tip was not "sufficiently reliable to create a reasonable and articulable suspicion of criminal activity." Prior to a hearing on that motion, Jones filed an additional motion to suppress on August 10, 2023, arguing that he was subjected to a full custodial arrest and that the informant's tip was not sufficiently reliable "to establish probable cause." At a hearing on the motions, the circuit court stated that "the tip [was] reliable," that Jones was not under arrest but was being detained while waiting for the K-9 unit, that the stop amounted only to an investigative stop, and that the wait was not unreasonable under the circumstances. As a result, the circuit court denied the motions to suppress in September 2023.

---

[5] The time between the stop and the K-9 unit arriving, as testified by Chief Jordan, was approximately 26 minutes. Jones testified that he had his arms out of the window for 30 minutes. However, he later testified that he waited 20 to 30 minutes for Deputy Walker to arrive. He said he waited another 30 minutes at the trunk of his car for the K-9 unit to arrive, but then subsequently said it was 15 to 20 minutes. Jones also acknowledged that he did not know what time it was when he was stopped. The circuit court found that "this incident lasted . . . 15 to 26 minutes."

In February 2024, Jones filed another motion to suppress, arguing that the Chase City police department did not have authority to stop Jones in Mecklenburg County. After a hearing on the motion, the circuit court denied the motion.

In November 2024, Jones moved the circuit court to reconsider the motions to suppress that were denied in September 2023. "[C]oncerned [that] he did not sufficiently articulate" his argument at the prior hearing, Jones asked the circuit court to reconsider whether "the stop" was a full-scale arrest that needed probable cause rather than an investigative stop due to the "'intolerable intensity' of the stop based on the use of a 'high risk felony stop.'" Following a hearing on the motion, the circuit court found that "the stop and subsequent detention of the Defendant was terrifying, humiliating, and intense, not justifiable under circumstances and that Chief Jordan should have gone through less threatening means for the stop." The circuit court then suppressed "any evidence obtained by the police after the stop." The Commonwealth appeals.

ANALYSIS

The Commonwealth contends that the circuit court erred in holding that the stop and detention at issue were "impermissibly intense" and, as a result, in suppressing the evidence obtained from the police after the stop. When reviewing a circuit court's denial of a motion to suppress, this Court is "bound by the [circuit] court's factual findings unless those findings are plainly wrong or unsupported by the evidence," but this Court reviews "the [circuit] court's application of the law de novo." *Malbrough v. Commonwealth*, 275 Va. 163, 168-69 (2008).

The Fourth Amendment of the United States Constitution does not "forbid[] . . . all searches and seizures, but unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (quoting *Elkins v. United States*, 364 U.S. 206, 222 (1960)); *see* U.S. Const. amend. IV. Furthermore, "Fourth Amendment jurisprudence recognizes three categories of police-citizen [contacts]: (1)

- 4 -

consensual encounters, (2) brief, minimally intrusive investigatory detentions based upon specific, articulable facts, commonly referred to as *Terry* stops, and (3) highly intrusive arrests and searches founded on probable cause." *Blevins v. Commonwealth*, 40 Va. App. 412, 420-21 (2003) (alteration in original) (quoting *Wechsler v. Commonwealth*, 20 Va. App. 162, 169 (1995)).

An officer may conduct an investigatory stop of a vehicle when they have an "articulable and reasonable suspicion that a motorist is . . . subject to seizure for violation of law." *Commonwealth v. Spencer*, 21 Va. App. 156, 159 (1995) (quoting *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)). "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330 (1990). "To determine whether an officer has articulated a reasonable basis to suspect criminal activity, a court must consider the totality of the circumstances, including the officer's knowledge, training, and experience." *Freeman v. Commonwealth*, 20 Va. App. 658, 661 (1995). Further, when determining the existence of reasonable suspicion that is based, at least in part, on an informant's tip, this Court again looks to the totality of the circumstances. *See Boyd v. Commonwealth*, 12 Va. App. 179, 186-87 (1991). Notably, unlike "[a]n anonymous tip [which] has a relatively low degree of reliability" and "requir[es] more information to sufficiently corroborate the information contained in the tip," tips from a known informant generally carry a higher degree of reliability because their "reputation can be assessed" and they "can be held responsible if [their] allegations turn out to be fabricated." *Harris v. Commonwealth*, 276 Va. 689, 695 (2008).

Here, the informant was a known informant who had a history of providing information that had always "proven to be correct" in the past and had given Chief Jordan information on numerous occasions. Unchallenged on appeal, the circuit court found that the informant was reliable, and the record supports this finding. The informant identified Jones by name, stated he was possibly armed, provided a description of the vehicle that included the color, make, and

license plate, and provided a description of the direction that Jones went that allowed the officer to find Jones within three to four minutes of receiving the tip. In addition to the tip from the informant, Chief Jordan also had a past dealing with Jones.

> The requisite level of *belief*, when calibrated to reasonable suspicion, is less than probable cause, less than a preponderance, and certainly less than beyond a reasonable doubt. All that is required is a *suspicion*— a reasonable one that is not "the product of a volatile or inventive imagination" or one "undertaken simply as an act of harassment."

*Hill v. Commonwealth*, 297 Va. 804, 817 (2019) (quoting *Terry*, 392 U.S. at 28). As such, while the tip may have been vague as it relates to the type and weight of the "drugs" and the type of firearm, and only said Jones was "possibly" armed, the tip was certainly sufficient to provide a reasonable officer in Chief Jordan's shoes with a reasonable suspicion that criminal activity was afoot and was sufficient to justify the stop, especially given the reliability of the tipster and the accurateness of the information provided about Jones.

Once an investigatory stop, or a *Terry* stop, has been initiated, there is no "litmus-paper test for distinguishing . . . when a seizure exceeds the bounds of an investigative stop." *Harris v. Commonwealth*, 27 Va. App. 554, 566 (1998) (quoting *DePriest v. Commonwealth*, 4 Va. App. 577, 586 (1987)). "Indeed, a brief but complete restriction of a suspect's liberty is valid under *Terry*, and the police are permitted to use methods of restraint that are reasonable under the circumstances." *Id.* "[I]n 'evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria.'" *Thomas v. Commonwealth*, 16 Va. App. 851, 856 (1993) (quoting *DePriest*, 4 Va. App. at 586), *aff'd en banc*, 18 Va. App. 454 (1994). "While the 'investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time,' the 'scope of the intrusion permitted will vary [with each case].'" *Id.* at 856-57 (alteration in original) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

- 6 -

"The touchstone of [an] analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (quoting *Terry*, 392 U.S. at 19). "As a general matter, society's concern for the safety of law enforcement officials when they are 'conducting [their] duties is of paramount importance.'" *Moore v. Commonwealth*, 25 Va. App. 277, 283 (1997) (alteration in original) (quoting *Harris v. Commonwealth*, 241 Va. 146, 151 (1991)). "These 'legitimate and weighty' risks cannot be ignored given 'the inordinate risk confronting an officer as he approaches a person seated in an automobile.'" *Hill*, 297 Va. at 817 (quoting *Mimms*, 434 U.S. at 110). "To police officers, it is a matter of life and death." *Id.* "*Terry* recognized the reasonableness of a minimal intrusion on personal privacy to [e]nsure the safety of an officer investigating, in a public place, a reasonable suspicion of lawbreaking." *Moore*, 25 Va. App. at 286. For this reason, the drawing of weapons, use of handcuffs, or the threat to use force does not necessarily exceed the bounds of an investigative stop. *See United States v. Hensley*, 469 U.S. 221, 235 (1985); *Lawson v. Commonwealth*, 55 Va. App. 549, 559 (2010).

In this case, with a reasonable suspicion that Jones may have been armed and possessing "drugs," the officer immediately called for assistance when conducting the stop on a country road. He immediately put away his weapon once assistance secured Jones. The officer did not verbally threaten Jones, stand outside of Jones's door with his firearm pointing at Jones, drag Jones out of the vehicle, nor even approach Jones prior to assistance arriving. The intrusion on Jones's personal privacy was reasonable under the circumstances.

Because we conclude that the investigatory stop and resultant detention in this case did not exceed the reasonable limits of such a stop and detention, we need not address whether probable cause for the seizure or search existed. For all these reasons, the circuit court erred in suppressing the evidence obtained following the stop.

CONCLUSION

Accordingly, we reverse the circuit court's judgment and remand for further proceedings.

*Reversed and remanded.*